CHRISTOPHER BECKMAN v. JOSEPH RICHARDSON.

1. PRACTICE; *Another Trial.* A plaintiff attempted to bring an action for the recovery of real property, but his petition was defective, and did not allege that he had any legal or equitable estate therein. The answer and reply cured the omissions, but upon the trial the defendant objected to the introduction of any evidence, on the ground that the petition was fatally defective. The court sustained the objection, and directed the jury to find a verdict for the defendant. The plaintiff then obtained leave of and afterward filed a new petition within the terms of the statute relating to actions concerning the recovery of real property. The defendant filed a new answer, containing substantially a denial of the title of plaintiff. *Held,* As the parties and the court treated the original pleadings as not setting forth an action for the recovery of real property, that the defendant, against whom judgment was rendered upon the first trial under the new or amended pleadings, was entitled as a matter of right to another or second trial under § 599 of the code.

2. RECOVERY OF REAL PROPERTY; *Plaintiff Must Establish What.* Where a plaintiff brings an action for the recovery of real property, and the defendant denies generally the title alleged in the petition, the plaintiff is required in the first instance to establish his legal or equitable estate, as the case may be, to the property described in his petition, and is also required in the first instance to give evidence of the value of the rents and profits thereof, if he demands judgment for the same, and it devolves upon such plaintiff to establish his title and the value of the rents and profits, by a preponderance of evidence.

3. RESULTING TRUST, *In Real Estate.* Where a father and son enter into a verbal agreement for the son to buy real estate for the father, and the father paid toward the purchase-price all that was paid, and the son in violation of the agreement took the title in his own name, and executed a mortgage for some of the purchase-money, a resulting trust is thereby raised from the fraud of the son in obtaining title; and where the son, while the father was in the open, notorious and exclusive possession of the premises under a claim of ownership, executed a deed to the land to a third person, who did not make any inquiry of the father as to his possession, had actual notice of the equitable title of the father in the land, and was not a purchaser thereof in good faith, the father is entitled to set up his equitable title and right of possession as against the claim and title of such purchaser.

*Error from Brown District Court.*

ACTION begun 21st of March, 1880, by *Christopher Beckman* against *Joseph Richardson* and *John Richardson,* to

recover the possession of the south half of the southwest quarter of section 4, town 4, range 17, in Brown county. Defendants filed an answer, which being held bad on demurrer, on June 2, 1880, they obtained leave of the court to file an amended answer. On July 27, 1880, plaintiff filed his reply. On the 7th day of February, 1881, being at the adjourned September Term of the district court for 1880, the case was called for trial. After the jury were impaneled and sworn, the defendant Joseph Richardson objected to any evidence being introduced under the petition, on the ground that it did not state facts sufficient to constitute a cause of action. The court sustained the objection. Thereupon the plaintiff orally applied to the court to allow him to insert in the petition an allegation of ownership of the land in himself. This motion the court refused to pass upon, and thereupon orally instructed the jury to return a general verdict in favor of the defendant Joseph Richardson. Thereon judgment was rendered against plaintiff for the costs, taxed at $99.01, and execution ordered to issue. During the term at which this judgment was rendered, plaintiff demanded another or second trial, by notice upon the journal; and thereupon the court vacated the judgment, and the action was continued until the next term. The plaintiff then asked and obtained leave of the court to file a new or an amended petition, and on the 11th day of March, 1881, the plaintiff filed his amended petition, to which amended petition the defendant Joseph Richardson filed an answer. At the September Term of the district court for 1881, and on the 4th day of October, the case again came on for trial. A jury were impaneled and sworn, and after hearing the evidence, the instructions of the court and arguments of counsel, returned a verdict in favor of the plaintiff, and assessed his damages for the withholding of the property at the sum of $200. Thereupon the defendant Joseph Richardson filed his motion to set aside the findings of fact returned by the jury and the general verdict, and for a new trial. On the same day plaintiff moved the court for judgment and restitution of the premises. On the 28th

of October following, the motion to set aside the findings and verdict of the jury and for a new trial, was heard and overruled. Thereupon the motion of plaintiff for judgment was considered and allowed. Then the defendants Joseph and John Richardson gave notice in open court that they demanded another or second trial under the statute, which notice by order of the court the clerk entered on the journal. This demand, coming on to be heard, was allowed by the court as to defendant Joseph Richardson, the plaintiff excepting. Thereupon the judgment rendered was vacated, and the cause continued until the next term. Afterward another trial was had, at the January Term of the court for 1882. At the conclusion of the evidence, the court, Martin, J., charged the jury as follows:

"1. This is an action of ejectment, brought by the plaintiff against the defendant, to recover the possession of the south half of the southwest quarter of section 4, in township 4, of range 17, in Brown county, the plaintiff claiming the ownership and right of possession thereof, and that the defendant unlawfully keeps him out of the possession of the same; and making claim also for the rents and profits or usable value of the land during the time that he has been kept out of the possession by the defendant.

"2. The defendant denies the claim of the plaintiff, and claims that he is the equitable owner of said premises, and entitled to the possession thereof.

"3. It is deemed proper to say, that although the controversy in this case relates only to the south half of said southwest quarter of section 4, yet the evidence has been directed to the whole quarter-section, and you may find it necessary to consider the nature of the title and the character and manner of the occupancy of the whole quarter-section in order to arrive at a just conclusion as to the title and right of possession of said south half of said quarter-section.

"4. There are some facts in the case, particularly respecting the title, about which there is no dispute in the evidence, and to which your attention is now called: Said quarter-section of land originally belonged to the Central Branch Union Pacific railroad company, by patent from the government of the United States. On October 19, 1868, said railroad company entered into a contract to sell said land to Clarence L.

Powers, at $6 per acre, to be paid in ten years, with interest at 10 per cent. per annum on the deferred payments. For the first two years he was to pay only the interest on the purchase-money, to wit, $96 each year, and thereafter he was to pay $120 per year on the principal for eight years, and also the interest on the deferred payments. He paid the two interest payments of 1868 and 1869 in due time. In June, he entered into an agreement in writing (through Eldred Harrington, his attorney in fact) with Joseph T. Richardson, an adult son of the defendant Joseph Richardson, to convey the north half of said quarter-section to said Joseph T. Richardson, in consideration of $54 paid down, and other payments, as follows: October 10, 1870, $208; October 10, 1871, $96; October 10, 1872, $90; October 10, 1873, $84; October 10, 1874, $78; October 10, 1875, $72; October 10, 1876, $66; and October 10, 1877, $60. This agreement to convey, or bond for a deed, was filed for record in the office of the register of deeds of Brown county, October 25, 1870, and recorded in book 'M,' at page 97. It appears upon the record that the bond having been complied with, the grantor was released from the obligation of the bond August 23, 1875. About June, 1873, said Clarence L. Powers entered into another agreement to sell the south half of said quarter-section to said Joseph T. Richardson, and on June 16, 1873, said Joseph T. Richardson executed to said Clarence L. Powers a mortgage upon the whole quarter-section to secure to said Clarence L. Powers the sum of $500, according to the conditions of five promissory notes of $100 each, payable in one, two, three, four, and five years, respectively. This mortgage was filed for record in the office of the register of deeds of Brown county, February 27, 1875, and recorded in book 'N,' at page 183, and it was released on the records August 23, 1875. On September 6, 1875, said railroad company conveyed said quarter-section of land by deed to said Joseph T. Richardson, said deed reciting that it was made in pursuance of said contract of date October 19, 1868, full payment having been made. This deed was filed for record in the office of the register of deeds of Brown county, September 27, 1875, and recorded in book 'S,' at page 163. On September 14, 1875, said Joseph T. Richardson executed to Ralph M. Pomeroy a mortgage on said quarter-section of land to secure the payment of the sum of $1,000 in five years, with interest. It appears that this mortgage was given for purchase-money due or to be-

come due to the railroad company and to Powers. It was filed for record in the office of the register of deeds of Brown county, September 27, 1875, and recorded in book 'X,' at page 46, and it was released on the record June 25, 1877. On May 17, 1877, said Joseph T. Richardson executed to the Northwestern Mutual insurance company a mortgage on said quarter-section of land to secure the payment of the sum of $1,600 in five years, with interest at the rate of 10 per cent. per annum, payable semi-annually. This mortgage was filed for record June 11, 1877, and recorded in book 'V' of the records in the office of the register of deeds of Brown county, at page 559. On February 3, 1879, said Joseph T. Richardson and his wife executed a mortgage on said quarter-section of land to the plaintiff Christopher Beckman to secure the payment of the sum of $1,900 — $100 thereof in one year and $1,800 thereof in five years, bearing interest at the rate of 10 per cent. per annum, payable semi-annually. Said mortgage was given subject to the said mortgage of $1,600 to the insurance company, and was filed for record in the office of the register of deeds of Brown county, February 17, 1879, and recorded in book '2,' at page 157. On December 4, 1879, said Joseph T. Richardson and his wife executed to the plaintiff Christopher Beckman a conveyance of said quarter-section of land, subject to said mortgage of $1,600 to said insurance company. Consideration named in deed, $3,450. The deed also included another ten-acre tract. This deed was filed for record in the office of the register of deeds of Brown county, January 1, 1880, and recorded in book '1,' at page 393.

"5. From the foregoing statement it will appear that the record title to the whole quarter-section is in the plaintiff Christopher Beckman, subject to the insurance company's mortgage for $1,600. He obtained possession of the north half only, and he brings this action to recover the south half. It will be your duty to determine, under the instructions given you as to the principles of law and equity governing the case, whether the plaintiff is entitled to recover the possession of said south half or not, and if he is so entitled, then to determine how much he should recover for the rents and profits during the time that he has been kept out of the possession by the defendant.

"6. A house was built on the tract first purchased in 1870, and the defendant and his family, consisting of his wife and ten minor children, and also said adult but then unmarried son,

Joseph T. Richardson, lived on it. Afterward, about 1875, a house was built on the tract purchased about 1873, and it was occupied about as the former one had been, and the old house went into decay. About June, 1877, said Joseph T. Richardson married and brought his wife home to live with the rest of the family, but soon after this he built a house on the tract first purchased and he and his wife went into it, and he and his family remained there until their removal to Atchison, about 1879.

"7. It may be best to consider first, whether the defendant had any equitable title or interest in the land which he could have asserted and enforced, as against Joseph T. Richardson before the sale to the plaintiff. If he had such an interest, then the second question will arise, whether the plaintiff purchased the land under such circumstances that the rights of the defendant can be asserted and enforced as against him.

"8. The rights of the defendant as against the said Joseph T. Richardson, proceed upon the theory of a trust: that is, that when said Joseph T. Richardson bought the land in controversy, there was an express contract beween him and the defendant, his father, to buy for his father or for himself and his father, and that he in fraud of his father's rights took the title in his own name, instead of taking it in his father's name, or in the name of himself and his father. In order to raise such a trust there must have been a contract of this nature, and it must have been carried out by the father paying the purchase-money or his agreed proportion of it. Any mere conversation, talk or agreement about the son using any of the father's effects in paying for the land or the improvements, or the mere fact of said Joseph T. Richardson using such effects, and collecting the wages of his younger brothers and sisters, and applying them in paying for the land or for improvements thereon, would not alone be sufficient to create an equitable title or interest in the defendant, but in order to be effectual for such purpose the money and effects must have been furnished by the defendant and his family, upon the express agreement that the defendant was to have the title to the land, either exclusively or jointly with his said son, Joseph T. Richardson.

"9. If you find from the evidence that the said Joseph T. Richardson was to buy the land for his father, or for himself and his father, and that his father and his family furnished the purchase-money or their agreed proportion of it, and that in violation of the agreement the said Joseph T. Richardson

took the title in his own name, then the defendant would have an equitable interest in the land which he might assert and enforce against the said Joseph T. Richardson if the said Joseph T. Richardson still held the land in his own name; otherwise, not.

"10. If you find that the defendant had an equitable title to or interest in the land which he might have asserted against the said Joseph T. Richardson, then your next inquiry should be as to whether such right of the defendant can be asserted or enforced against the plaintiff Christopher Beckman. The plaintiff claims that before he got the deed from Joseph T. Richardson, he had a conversation with the defendant, and asked him what interest he had or claimed in the land, and that the defendant stated that he had no interest in the land and did not claim any, and that thereupon, relying upon said representations of the defendant, he took the deed from Joseph T. Richardson. This is denied and disputed by the defendant. If true, the defendant would be estopped from asserting any claim against the plaintiff, and you should find in favor of the plaintiff. On the other hand, it is claimed on the part of the defendant that before the plaintiff took said deed he was notified that the defendant claimed an equitable interest to or in the land. This is denied and disputed by the plaintiff. If true, then the plaintiff took the land subject to any right of the defendant which he might have asserted and enforced against said Joseph T. Richardson.

"11. If the defendant had an equitable title to or right in the land, and the plaintiff took his deed from Joseph T. Richardson with actual notice thereof, then the plaintiff would have no better right than the said Joseph T. Richardson would have. But sometimes a purchaser of land having no actual notice of the equity of another is bound by what is termed constructive notice by possession. But the possession which will be equivalent to actual notice to a subsequent purchaser must be an actual, open and visible occupation, inconsistent with the title of the apparent owner by the record; not equivocal, occasional, or for a special or temporary purpose. A mere occupancy of a house upon land is not necessarily the possession of such land. Occupancy must be under some claim of title, either direct or derivative, in order to constitute possession. And if you find that at the time the plaintiff took said deed from Joseph T. Richardson, said south half of said quarter-section was occupied by Thomas Richardson, as the tenant of said Joseph T. Richardson, and the defend-

ant and his family were only occupying the house thereon by the sufferance of said Thomas Richardson and Joseph T. Richardson, then said occupation by said Joseph Richardson would not be equivalent to actual notice of an equitable title in said Joseph Richardson, if he had such equitable title. And if the said Joseph. Richardson, defendant, after he knew that the title of the land was in his son Joseph T. Richardson by the contract and deed, knowingly permitted said Joseph T. Richardson to exercise exclusive control of the land in controversy, either by leasing it in his own name and collecting the rent for the same, or by executing a mortgage or mortgages upon it, or by putting the land in crops and reaping and appropriating them for his own use and benefit, and yet made no objection by commencing an. action or otherwise notifying the public of his claim upon the land, and the plaintiff was advised of said facts in relation to the control of the land by said Joseph T. Richardson, and took his deed for the same without any knowledge that the defendant claimed any equitable title, then the mere fact that the defendant and his family occupied the house would not prevent a recovery by the plaintiff, even though the defendant had an equitable title or interest in the land as against Joseph T. Richardson. But if the defendant had an equitable title to or interest in the land in controversy as against Joseph T. Richardson, and the defendant maintained a possession thereof which was actual, open and visible and of such a character as to be inconsistent with the idea that Joseph T. Richardson was the owner of the land, then such possession would be. notice to the plaintiff and to the public of the defendant's right in the land, and in such case the purchase by the plaintiff would be subject to such rights of the defendant in the land.

"12. If you find that it was the agreement between the defendant and his son, Joseph T. Richardson, that the land was to be purchased for the defendant, or for the defendant and his said son, Joseph T. Richardson, or for the defendant and his family, yet if the defendant knowingly consented that the title should be taken in the name of said Joseph T. Richardson, or though he did not consent prior to the taking of said title, but afterward learned the fact of the title being so taken and permitted it so to remain, and the said Joseph T. Richardson to treat it as his own by mortgaging or leasing it in his own name, or by planting and reaping the crops for his own use and benefit, then he will be estopped from setting up an equitable claim to said land against the plaintiff

if the plaintiff took the title from said Joseph T. Richardson in good faith, without any actual knowledge of the defendant's claim upon the land.

"13. If under the evidence and the foregoing instructions the plaintiff is entitled to recover, then he is also entitled to recover the value of the rents and profits or usable value of the land during the time that the defendant has kept him out of the possession, from the date that the plaintiff notified the defendant to leave the premises.

"14. The burden of proof is upon the plaintiff to show his right to the possession of said land and that the defendant unlawfully keeps him out of the possession of the same, and it devolves upon the plaintiff to make out his case by a preponderance of the evidence.

"15. The court has, for the purpose of your instruction, stated a good many facts as being undisputed; but you are the exclusive judges of all questions of fact, and if the court has erred in any statement of fact, you are not bound to follow such erroneous statement. You are only bound to follow the instructions of the court so far as they pertain to matters of law—the statements of fact being made by the court only for the purpose of making clear and plain the principles of law governing the case.

"16. You are the exclusive judges of the weight of the testimony and of the credibility of the witnesses; and if you find that any witness has testified willfully, corruptly and falsely to any material fact, then it is your province to determine how much or whether the whole of his or her testimony should be disregarded.

"17. Two forms of verdict will be presented to you—one suitable for finding in favor of the plaintiff and assessing the amount of his recovery, and the other suitable for finding in favor of the defendant. There will also be presented to you two series of special questions of fact—one series being framed by the plaintiff, and the other by the defendant. Each question of each series is to be answered in writing, and at the bottom of each series the foreman's name must be signed in the same manner as the general verdict. It will be your duty to carefully weigh and consider the testimony, and to answer each question according to the fact, whether it appears to be in favor of one party or the other, and to bring in such a general verdict as shall be warranted by the evidence under the rules of law and equity laid down in these instructions."

The jury found a verdict for the defendant Joseph Richardson, and returned the following questions and answers:

"Q. In whom was the legal title to the land in dispute at the time of the commencement of this suit? A. In the plaintiff.

"Q. At the time plaintiff took the deed for the land in dispute, who was in the possession of the southwest quarter of section four, town four, range seventeen, Brown county, Kansas? A. Joseph T. Richardson was in possession of the north half, and Joseph Richardson was in possession of the south half.

"Q. State whether Joseph T. Richardson assumed possession, either by himself or tenant, of the land in dispute, and claimed any right of possession at the time Beckman took his deed. A. Yes.

"Q. Did the defendant Joseph Richardson claim an adverse possession to Joseph T. Richardson, his son, before the plaintiff took the deed to the land in dispute? A. Yes.

"Q. Did the defendant Joseph Richardson, prior to the time Beckman took the title to the land in controversy, claim to have the possession of the land as the owner thereof? A. Yes.

"Q. If the defendant Joseph Richardson claimed to own the land in controversy at the time plaintiff got the deed for the land, did he have possession under a claim of ownership that was open, notorious and exclusive? A. Yes.

"Q. If the defendant Joseph Richardson, at the time plaintiff got the deed for the land in dispute, claimed any interest in the land in dispute, was such claim known outside of the members of his family, including his son-in-law, Stephen A. Holcomb, Z. Holcomb and W. M. Robinson? A. Yes.

"Q. Did the defendant Joseph Richardson ever have the exclusive possession of the land in controversy, or of the quarter-section of which it formed a part? A. Yes, as to the land in controversy.

"Q. Just before plaintiff got the deed for the land in dispute, did the defendant Joseph Richardson tell him that he, Joseph Richardson, did not claim any interest to the land in controversy, or words to that effect? A. No.

"Q. What kind of an agreement, if any, was entered into between Joseph Richardson and his son Joseph T. Richardson about the purchase of the southwest quarter of section four, town four, range seventeen, Brown county, Kansas? A. A

42—28 KAS.

verbal agreement to buy for his father — north half first — south half afterward.

"Q. Was such agreement, if any you find there was, clear and explicit, or did the family of Joseph Richardson gather an impression to that effect from after representations that Joseph T. Richardson may have made? A. It was clear and explicit.

"Q. What, if anything, did the defendant Joseph Richardson pay toward the purchase-price of the land known as the southwest quarter of section four, town four, range seventeen, Brown county, Kansas? A. All that was paid, viz., a portion of his means, wages of his children, and of the products of the farm.

"Q. What did he contribute toward the improvement of the same, if anything? A. A portion of his means, labor of his family, and of the products of his farm.

"Q. If the defendant Joseph Richardson was to have an interest in said quarter-section of land, in whom did they agree that the title to the land should be taken? A. In the father, Joseph Richardson.

"Q. Was it in violation of any contract that the son, Joseph T. Richardson, took the title to the land in dispute? A. Yes.

"Q. If the title to the land was wrongfully taken in the name of Joseph T. Richardson, did the defendant Joseph Richardson by his conduct assent to the same? A. No.

"Q. Was the defendant Joseph Richardson aware of the fact that Joseph T. Richardson was mortgaging and treating the land as his own, or could he have ascertained that fact by exercising a reasonable amount of diligence? A. First clause, No. Second clause, Yes.

"Q. If the defendant Joseph Richardson had any interest in the land in controversy, was he, or not, grossly negligent in protecting that interest? A. He was not.

"Q. Did the negligence of Joseph Richardson, the defendant, if you find there was any such negligence, enable said Joseph T. Richardson to sell the land in controversy to the plaintiff as the property of said Joseph T. Richardson? A. No.

"Q. Was the plaintiff a purchaser of the land in controversy in good faith? A. No.

"Q. Do you find from the evidence that Joseph T. Richardson intended that the defendant Joseph Richardson could have the north half of the southwest quarter of section 4,

township 4, range 17, Brown county, Kansas, if said defendant would have contract and pay for it? A. Yes.

"Q. Was there an understanding to that effect or one similar to it, and if similar, what was it? A. Yes, there was a contract.

Q. When Joseph Richardson came to this country and arrived in Brown county, Kansas, did he refuse to have any land, and refuse to have the north half of the Powers tract? A. No.

"Q. Did Joseph T. Richardson thereupon purchase the land for himself? A. No.

"Q. Did Joseph T. Richardson tell his brothers and sisters to help him pay for the place, and the father and mother could have a home thereon as long as they lived? A. No.

"Q. Was there any arrangement between the purchaser of the north half and of the south half (being the land in controversy) between Joseph T. Richardson and his father, Joseph Richardson, as to purchasing the south half? A. Yes.

"Q. Was there ever any division of the quarter-section of land upon which the Richardsons resided by which the father was to have the south half and Joseph T. Richardson the north half of the quarter-section? A. Yes.

"Q. Was there any further understanding between Joseph T. Richardson and the family of Joseph Richardson than that Joseph Richardson would always allow the family to live on the place as long as he owned it if they would help him pay for it, or did the agreement or understanding, whatever it may have been, go that far? A. Yes, the title was to be in the father, Joseph Richardson.

"Q. What amount of the purchase-price of the quarter-section is still embodied in mortgage on the place given by Joseph T. Richardson? A. On September 14, 1875, the date of mortgage to railroad company, there was due about $1,000.

"Q. Was the residence of the defendant Joseph Richardson on the quarter-section or on the portion in controversy anything more than living on the place by consent of Joseph T. Richardson? A. Yes.

"Q. Did plaintiff have any actual notice of any equitable title or interest to the land in dispute in defendant Joseph Richardson at the time he took his deed to the land? A. Yes.

"Q. Was the defendant Joseph Richardson in actual possession of said south half of southwest quarter section 4,

township 4, of range 17, at the time plaintiff had his transaction for purchase thereof from Joseph T. Richardson? A. Yes.

"Q. At the time of such transaction was defendant Joseph Richardson in such possession under claim of ownership and right of possession thereto? A. Yes.

"Q. Did plaintiff have actual knowledge of said Joseph Richardson's possession of such land, and see him on the land? A. Yes.

"Q. Did plaintiff make any inquiry of said Joseph Richardson as to his possession of said land? A. No.

"Q. At the time of such transaction did plaintiff know that Joseph T. Richardson was living with his family on the north eighty acres, and said Joseph Richardson with his family on the south eighty acres? A. Yes.

"Q. Was said south eighty acres purchased and improved and occupied thereafter by said Joseph Richardson under agreement between said Joseph and Joseph T. Richardson that the same should be the home of said Joseph Richardson and his family, and belong to said Joseph Richardson? A. Yes.

"Q. Did said Joseph Richardson and his family contribute to the purchase-money and cost of improving said land as agreed to be done with said Joseph T. Richardson, and make such contribution in good faith under claim of ownership? A. Yes.

"Q. Did said Joseph Richardson with his family contribute towards the payment for each the purchases and improvements of the north and south half of said southwest quarter of section No. 4, to the extent of the relative cost for said south half? A. Yes.

"Q. At the time of said transaction between Joseph T. Richardson and plaintiff, was said Joseph T. Richardson in occupation of the north half and said Joseph Richardson in occupation of the south half of said quarter-section, and in occupation of said respective portions by mutual agreement of said parties as parties-in-interest owners? A. Yes.

"Q. Did defendant Joseph Richardson, at the time of such transaction, occupy said south eighty acres in open, visible and notorious manner as an owner thereof? A. Yes.

"Q. Previous to plaintiff obtaining such deed from Joseph T. Richardson, had defendant Joseph Richardson fully performed the terms of agreement on his part with said Joseph T. Richardson, for the purchase of said eighty acres, and re-

lying on such agreement gone into possession of same, and made permanent and valuable improvements thereon which then existed in the possession of said defendant? A. Yes.

"Q. Did the plaintiff, at the time he took the deed from Joseph T. Richardson, pay any new consideration other than the satisfaction of his debt secured by the mortgage of Feb. 3, 1879? A. Yes, the amount of mortgage due insurance company.

"Q. If plaintiff paid any new or additional consideration, what was it and how much? A. To the amount of mortgage due Mutual insurance company, dated May 17th, 1877."

Thereon judgment was rendered by the court in favor of Joseph Richardson. The plaintiff excepted, and brings the case here.

*James Falloon,* for plaintiff in error.
*W. W. Guthrie,* and *C. W. Johnson,* for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: At the September term of the district court for 1881, judgment was rendered in this case upon the general verdict and findings of the jury in favor of plaintiff in error. Defendant in error demanded another trial, by notice on the journal, and thereupon the judgment was vacated and the action set for trial at the next term. At the January term following, trial was again had, and a verdict rendered in favor of the defendant. Upon this verdict and the special findings of the jury, judgment was rendered in his favor.

The first errror assigned is the vacation of the judgment rendered at the said September term of the court, and the continuation of the cause for a new trial to the subsequent term. It is insisted that the trial had at said September term was the second trial of the cause, and that the court had no power under the provisions of § 599 of the code to grant to the defendant a third trial. It appears from the record that the petition originally filed was defective as a petition for the recovery of real property, and although this defect was abundantly cured by the answer and reply filed in the action, the court upon the trial on said pleadings sustained an objection

of the defendant to the introduction of any evidence, on the ground that the petition did not state facts sufficient to constitute a cause of action. While the plaintiff excepted to this ruling, he afterward waived all errors therein by obtaining leave and filing a new or amended petition. To this petition the defendant filed a new and different answer than the one filed to the original petition. The trial court having treated the original petition and the pleadings thereunder as constituting no cause of action, and the plaintiff having accepted by his subsequent conduct the ruling of the court to be correct, and the parties thereafter having filed a new petition and a new answer, the trial had thereon at the said September term of the court must be regarded as the first trial, and therefore defendant had the right to demand another trial, by notice on the journal, and the court did not err in vacating said judgment and in setting the action for trial at the following January term. The trial at the January term for 1882 may be considered under the circumstances of this case as another or second trial of the cause. It was clearly the second trial had upon the pleadings as they existed at that time, and all the parties, together with the court, seem to have regarded that the original pleadings failed to set forth an action for the recovery of real property. While we do not intend to intimate that in actions for the recovery of real property the pleadings may not from time to time be amended, and while it is also true that upon each amendment parties as a right are not entitled to two trials, yet as in this case the parties and the court acted upon the theory that no action was pending for the recovery of real property at the trial had upon the original pleadings, the trial at the September term of 1881 must be deemed the first trial in the action for the recovery of the property in controversy.

The plaintiff, at the conclusion of the evidence, asked the court to instruct the jury, "That the burden of proving the equitable title in the said Joseph Richardson devolved upon him, and failing to prove the same by a preponderance of the testimony, they must find for the plaintiff upon that point."

The court refused this instruction, but charged the jury, among other matters, "That the plaintiff held the record title to the land, and that the defendant claimed to be the equitable owner and entitled to the possession thereof, and also charged that the burden of proof was upon the plaintiff to show his right to the possession of the land, and that the defendant unlawfully kept him out of the possession thereof, and that it devolved upon the plaintiff to make out his case by a preponderance of the evidence." But the court did not stop here. It very carefully called the attention of the jury to all of the evidence which was uncontradicted, and then very clearly, explicitly, and at length, announced what facts were necessary to be established in order to constitute the defendant an equitable owner of the premises, and even if an equitable owner, what facts were necessary to entitle him to assert such ownership as against the plaintiff.

As the plaintiff instituted his action for the recovery of the premises upon his legal title, he was bound to prove in the first instance that he held the legal title, and also the value of the rents and profits for which he demanded judgment. Thereupon the defendant was bound to establish such facts as constituted him the equitable owner of the premises, and his right to assert the ownership and possession as against the plaintiff.

The special findings of the jury clearly show that the jury were convinced of the equitable ownership of the defendant, and as the charge of the court did not in any manner direct the jury that the plaintiff was bound to prove other than the allegations of his petition, the refusal of the specific instruction asked for was not material error, or prejudicial to his rights.

It is also urged that there was no evidence introduced to uphold the verdict and special findings of the jury. The evidence is very conflicting, and in many matters flatly contradictory, but a perusal of the record satisfies us that there was sufficient introduced on the part of the defendant to sustain, not only the verdict, but the special findings. It is

likewise claimed upon the evidence, the defendant was not the owner of any equitable estate in the land. The recitation of some of the more important facts embraced in the special findings is conclusive to the contrary. Thus, the jury found that there was a verbal agreement entered into between Joseph T. Richardson, the son, and Joseph Richardson, the father, for the son to buy for his father the land in controversy; that the defendant Joseph Richardson paid toward the purchase-price all that was paid; that the father and son agreed the title of the land should be taken in the name of the father, the defendant Joseph Richardson; that it was a violation of the contract that the son, Joseph T. Richardson, took the title to himself; that the father did not assent to this action, and had no actual knowledge that his son was mortgaging and treating the land as his own; that there was an arrangement between the father and the son that the father was to have the south half of the quarter for himself; that at the time the plaintiff took his deed, the defendant was in the open, notorious and exclusive possession of the premises under a claim of ownership; that the plaintiff did not make any inquiry of the defendant as to his possession of the land; that the plaintiff had actual notice of the equitable title of the defendant at the execution of the deed, and was not a purchaser of the land in good faith.

The other errors complained of, in view of the special findings of the jury, are unimportant and need not be noticed.

The judgment of the district court will be affirmed.

VALENTINE, J., concurring.

BREWER, J., not sitting.