No. 45,103

GUY PINE, INC., a Corporation, *Appellant*, v. CHRYSLER MOTORS
CORPORATION, a Corporation, *Appellee*. (CHRYSLER CORPORATION,
a Corporation; PAUL M. MILES; NELSON LEAR; JAMES WISE and
GORDON JAMES, Defendants.)

(440 P. 2d 595)

Opinion filed May 11, 1968.

*Marion W. Chipman,* of Olathe, argued the cause, and *Gayles R. Pine,* of
Warrensburg, Missouri, was with him on the brief for appellant.

*Henry G. Eager,* of Kansas City, Missouri, argued the cause, and *W. C. Jones*
and *Edward M. Boyle,* of Olathe, and *Richard K. Andrews* and *Roy P. Swanson,*
of Kansas City, Missouri, were with him on the brief for appellee.

The opinion of the court was delivered by

FROMME, J.: This appeal is from a judgment granting Chrysler
Motors Corporation physical possession of premises leased and
occupied by Guy Pine, Inc.

Chrysler Motors Corporation will be referred to as Chrysler and
Guy Pine, Inc., will be referred to as Pine.

Chrysler owned a commercial building on a tract of land in Johnson County, Kansas, suitable as a retail establishment for the sale and servicing of automobiles, which it leased in writing to Pine. Pine entered into direct dealer agreements with Chrysler, which agreements authorized Pine to engage in the business of selling and servicing automobiles, parts and accessories to be manufactured and furnished by Chrysler. The lease and dealer agreements were entered into in 1961. Numerous dissatisfactions and disagreements arose between these parties over their mutual business interests in the operation of the dealership. Patience wore thin on both sides.

A flood tide of trouble engulfed the business in November 1966 when Pine filed an action against Chrysler and others for damages of over a million dollars and asked for an injunction to prevent revocation of the franchise and to require delivery of automobiles.

The defendants answered and Chrysler counterclaimed to terminate the dealer agreements and the written lease, to recover possession of the premises leased, to recover rentals remaining unpaid and to require an accounting on the dealer agreement accounts.

Cutting through the complicated claims and the maneuvering of the parties after issues were joined, the court on motion of defendants determined that the issues of unpaid rent and recovery of possession should be tried separately at an early date. After a pretrial conference a trial to the court was had on these issues. The court determined Chrysler was entitled to immediate possession and that monthly rentals were unpaid and in default from February 1, 1966, to February 7, 1967, in the amount of $25,020. Judgment for recovery of these rentals was reserved for later consideration upon trial of the accounting issues. It was determined that the accounting issues should be referred to a master at some later time.

The plaintiff Pine appeals and attacks the propriety and validity of the judgment for possession of the premises. It objects to the severance of issues and points to K. S. A. 60-1001 (c), relating to actions for possession of real property in the nature of ejectment, where it is said:

"If plaintiff prevails the judgment shall be for possession and damages for the loss of rents and profits, if any, and execution to enforce the same shall be issued to the sheriff by the clerk at the written request of the party entitled thereto."

Appellant contends the statute authorizes a judgment for the prevailing party when such judgment includes damages for the loss of rents and profits along with the grant of possession. It argues that

failure of the trial court to render judgment for the rent due was a jurisdictional defect and the judgment rendered was void. We do not agree.

The written lease by which Pine obtained possession of the premises provided:

"21. If Tenant shall fail to pay to Landlord any installment of rent, or any additional rent or other charges as and when the same are required to be paid hereunder, and such default shall continue for a period of fifteen (15) days after notice, or if Tenant shall default in the performance of any of the other terms, covenants or conditions of this lease and such default shall continue for a period of thirty (30) days after notice, (except as otherwise in this lease provided), or if any of the events set forth in Paragraph 11 hereinabove occur, or if Tenant shall be lawfully dispossessed from the demised premises during the term of this lease, then Landlord, without prejudice to any remedies which may be available for arrears of rent or for Tenant's breach of covenant, shall have the option to declare this lease immediately forfeited and the said term ended, and to re-enter and repossess said premises, with or without process of law, . . ."

The possessory remedy to enforce forfeiture provisions in a written lease is an equitable one and not dependent upon K. S. A. 60-1001. This statute enlarges the old remedy of ejectment which in the early history of the common law was limited to obtaining possession. (28 C. J. S., Ejectment § 2, p. 848; 25 Am. Jur. 2d, Ejectment § 1.)

Under this statute the remedy of ejectment is extended and the prevailing party is authorized to recover *damages for loss of rents and profits.* Such damages were recoverable in a suit for possession under our prior statutes and without regard to an agreement for rents by written lease. (*Beckman v. Richardson,* 28 Kan. 648; *Deitzler v. Wilhite,* 55 Kan. 200, 40 Pac. 272; *Haish v. Pollock,* 79 Kan. 624, 101 Pac. 3.)

Recovery of rents has generally been considered entirely separate and distinct from a judgment in ejectment. (28 C. J. S., Ejectment § 143, p. 1033; 25 Am. Jur. 2d, Ejectment § 148.)

The present action is one to enforce forfeiture provisions in a written lease and to recover unpaid rent as distinct from damages for loss of rents and profits.

A separate trial of an issue, such as a right to possession, may be ordered by the trial judge in the furtherance of convenience and justice or to avoid prejudice and undue delay when the claims of the parties reasonably justify such action. A motion asking for issues to be tried separately at an early date rests largely in the discretion of the trial court.

K. S. A. 60-242 (*b*) provides:

"The judge in furtherance of convenience or to avoid prejudice may order a separate trial in the county where the action is pending or a different county in the judicial district, of any claim, cross-claim, counterclaim, or third-party claim, *or of any separate issue* or of any number of claims, cross-claims, counterclaims, third-party claims, or issues." (Our emphasis.)

This statute was patterned after the Federal Rules. In 2B Barron & Holtzoff, Federal Practice and Procedure, § 943, p. 185, referring to Rule 42 (*b*), it is said:

"This rule is intended to further convenience and avoid delay, and to serve the ends of justice. Other rules liberally provide for joinder of claims, parties and actions, and Rule 42 (*b*) is intended to counterbalance them by permitting a separate trial of issues which cannot well be tried together, or which can be conveniently and quickly determined before trial of the other issues. . . ."

In *B-W Acceptance Corporation v. Benack*, (Mo., 1967) 423 S. W. 2d 215, the St. Louis Court of Appeals under facts very similar to those in our present case granted a trial on the issue of the landlord's right to possession in a statutory landlord-tenant suit, separate from the landlord's claim for unpaid rent and defendants' counterclaim for damages for tortious conspiracy to defraud. When delay in getting possession was burdening the landlord and when the tenants had filed a counterclaim involving complicated issues not developed for trial, severance was held proper.

Under the facts and circumstances of our present case severance and trial on the issue of possession appear proper.

Appellant Pine next argues the court erred in admitting into evidence eleven exhibits consisting of letters, statements of account, and notices of nonpayment of rent. Pine argues their admission into evidence was without proper foundation, without proof of the authority of the corporation officers who signed and mailed them and without a compliance with the best evidence and the hearsay rules.

It can hardly be said that these letters, accounts and notices were not relevant evidence under K. S. A. 60-401 (*a*) and (*b*). We have examined each exhibit and all relate directly to the issues of possession, payment of rents or notice to vacate. Their admission into evidence in a trial to the court is subject to a rather wide discretion. (K. S. A. 60-261.) This court should disregard all mere technical errors and irregularities which do not appear affirmatively to have prejudicially affected substantial rights. (K. S. A. 60-2105.) Appellant's contentions are of a technical nature and in most instances

without merit. Such irregularities claimed should be disregarded on appeal. For supporting cases see 1 Hatcher's Kansas Digest, Appeal and Error, § 522 and West, 2A Kansas Digest, Appeal & Error, § 1050 (4).

The final points raised by appellant relate to that provision of the written lease which reads:

"1. *Tenant shall pay* to Landlord at Landlord's office address above set forth or at such other place as Landlord may from time to time designate in writing, rent for the said term in the total amount of $114,000.00, which said *rent* shall be paid *in monthly installments* as follows: $1,800.00 in advance beginning March 1, 1961 and monthly thereafter during the term of this lease, *on the first business day of each month, in lawful money of the United States.* Tenant agrees to pay the said rent in the manner aforesaid and such other sums as are hereinafter provided to be paid as additional rent and any and all other sums and charges hereinafter specified *by separate payment and without setoff or deduction whatsoever.*" (Emphasis added.)

It is uncontroverted that appellant Pine made no payments of rent after January, 1966. Chrysler's counterclaim for rent was filed January 30, 1967. Pine contended at the trial below and now urges on appeal that the underlined portion of the foregoing provision was amended or waived and that Chrysler is now estopped to assert nonpayment of rent as a basis for the forfeiture of the lease.

The facts giving rise to these contentions begin with a letter written by an employee of Chrysler dated November 30, 1965, and sent to Pine. Request was made that monthly rent payments be included in a check covering both the rent and amounts due on the dealer account. For several months after this letter was mailed rent was billed in a dealer account statement which contained both charges and credits. Thereafter Chrysler restricted the Pine dealer account by applying any credits due to Pine in payment of the charges owing instead of issuing their check for credits. Appellant contends that the credits due him from Chrysler exceeded and offset the amount of rentals due.

The court made extensive findings of fact and conclusions of law. Some of the most pertinent of these are:

"10. Plaintiff (Pine) has never made, nor offered to make any rental payments by cash or by check since the monthly rental payment due for occupancy during the month of January, 1966."

. . . . . . . . . .

"15. PINE was not mislead, deceived or harmed by CHRYSLER MOTORS' aforesaid practice of including these monthly rental payments upon its consolidated monthly Dealer's Statement billings. In fact, PINE did not accede or consent to this billing practice but, instead, always considered and acted in a

manner indicating that its monthly lease rentals were wholly separate obligations as provided in the lease agreement.

"16. CHRYSLER MOTORS used this consolidated monthly billing arrangement only for its own bookkeeping convenience, and did not thereby waive, modify or amend any of the terms and provisions of said lease agreement.

17. Among other rentals due since February 1, 1966, the rentals due for the months of October, November and December, 1966, and January, 1967, totaling $8,340, were separately billed to PINE in advance each month and have not been paid by cash, check or bookkeeping credits to PINE's account.

"18. On January 3, 1967, CHRYSLER MOTORS served duplicate rental default and lease eviction notices by registered mail upon PINE's President."

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

"20. CHRYSLER MOTORS has never specifically applied any credits due from it to PINE upon any of the monthly rental payments due on these leased premises.

"21. CHRYSLER MOTORS has never waived nor is it now estopped to claim, contend and assert that it is entitled to receive monthly rental payments in cash, in advance and without set-off or deduction, all as provided in paragraph 1 of the lease agreement."

The letter from Chrysler to Pine cannot be construed as an attempt to amend the written lease as urged by appellant. It related to billing and payments only. One party to a contract cannot unilaterally change the terms of the contract. To make a binding contract and to amend its terms there must be mutuality. (See 2 Hatcher's Kansas Digest, Contracts § 2; West, 3A Kansas Digest, Contracts § 10 (1).)

Contrary to the arguments of appellant, it did not act to its own prejudice after the receipt of the combined billing letter. Therefore the elements necessary to constitute a waiver or an estoppel against Chrysler do not exist under the facts and circumstances of this case. (See *Lyon v. Kansas City Fire & Marine Ins. Co.*, 176 Kan. 411, 271 P. 2d 291; and *Peterson v. City of Parsons*, 139 Kan. 701, 33 P. 2d 715.) The appellant Pine did not comply with Chrysler's request and its position remained unchanged.

In addition the written lease contained a provision against a waiver of rights. It provided any failure to insist upon strict performance of any covenant therein "shall not be deemed to operate as a waiver of the rights of Landlord to enforce the payment of rent" or to exercise any of the remedies reserved.

The evidence clearly supports the findings and conclusions of the trial court and no prejudicial error appears in the record.

The judgment is affirmed.