HOUSING AUTHORITY OF THE CITY OF HARTFORD *v.* MARIE MCKENZIE

APPELLATE SESSION OF THE SUPERIOR COURT

FILE NO. 701

Argued January 17—decided June 22, 1979

*Robert J. Kor,* for the appellant (defendant).

*Daniel B. Kenney,* for the appellee (plaintiff).

ANTHONY J. ARMENTANO, J. The plaintiff housing authority of the city of Hartford is a public housing agency that owns and leases residential dwelling units at 70 Kensington Street, Hartford. On June 9, 1975, it entered into a written lease with the defendant for one of its Hartford apartments. The lease was automatically renewed at the end of every month, absent any action by either party to terminate it. The housing authority could terminate the lease for nonpayment of rent or for "good cause," which was defined as including "serious or repeated interference with the rights of other tenants," or the "creation of physical hazards in the leased premises." The lease also provided that in the event that the housing authority should terminate the lease for good cause, the tenant would be notified of the proposed eviction and the specific reasons therefor at a preliminary conference. The tenant would then have the right to request a hearing in accordance with a grievance procedure incorporated by reference into the lease.

On August 1, 1977, the housing authority served the defendant with a notice to quit possession on or before August 31, 1977. The notice contained the following statement of reasons: "Maintaining a dog and maintaining an apartment and adjoining hallways so as to constitute serious interference with the health, safety and peaceful enjoyment of others." After the defendant's failure to vacate the

premises, the housing authority began this eviction action. Following a full judicial hearing, the court below found that the defendant maintained her dog and apartment in a manner that constituted a threat to the health and safety of the other tenants, and rendered judgment for the housing authority.

From that judgment, the defendant has appealed, making three claims of error that we will consider:[1] (1) the trial court's conclusion that the housing authority did not have to comply with the termination procedures set forth in the lease; (2) the trial court's conclusion that the defendant had been afforded due process of law as guaranteed by the fourteenth amendment to the United States Constitution; and (3) the trial court's finding that the defendant was a threat to the health and safety of the other tenants.

I

The defendant claims that the termination procedures set forth in the lease, which incorporated by reference the grievance procedures in effect at the time the grievance was brought, should have been complied with by the housing authority. The trial court concluded that a bypass to the grievance procedure, set forth in regulations promulgated by the federal department of housing and urban development; 24 C.F.R. § 866.51(a) (1978); eliminated the necessity for the housing authority to comply with normal termination procedures where the termination is "based upon a tenant's creation or maintenance of a threat to the health or safety of other tenants." Ibid. This grievance procedure bypass is available only in those jurisdictions that afford a

---

[1] Although the defendant briefed two additional claims, we find it unnecessary to consider them inasmuch as the record does not indicate that they were raised below. Practice Book, 1978, § 3063; *State* v. *Cuvelier*, 175 Conn. 100, 111, 394 A.2d 185 (1978).

tenant a hearing in court containing traditional elements of due process. Ibid.[2] The trial court concluded that the grievance procedure in the lease was inapplicable for the following reasons: The lease contained a clause obligating the tenant to "abide by such necessary and reasonable regulations as may be promulgated by [the housing authority]"; the bypass procedure set forth in 24 C.F.R. § 886.51 (a) (1978) had been adopted by the housing authority; and, the defendant had been afforded a full judicial hearing.

Although we conclude that the bypass procedure contained in 24 C.F.R. § 866.51(a) (1978) relieved the housing authority of the obligation to comply with the termination procedure, we do not base our conclusion on the reasoning relied upon by the housing authority or by the trial court. Both reasoned that the incorporated regulations had altered the lease so as to include the grievance procedure bypass. We recognize as a basic principle of contract law that parties to a contract may incorporate into their agreement the terms and conditions of another document by reference, so that the two will be interpreted together as the agreement of the parties. *Randolph Construction Co.* v. *Kings East Corporation,* 165 Conn. 269, 275, 334 A.2d 464 (1973); *Batter Building Materials Co.* v. *Kirschner,* 142 Conn. 1, 7, 110 A.2d 464 (1954); 3 Corbin, Contracts § 549; 4 Williston, Contracts (3d Ed. Jaeger), p. 135, § 581. The critical concern in determining the validity of the terms of a document incorporated by reference is whether the contracting parties knew of and assented to the additional provisions. This meeting of the minds and mutuality of assent are the most basic ingredients of a contract. Hence, the courts, while willing to enforce incorporated terms,

---

[2] The elements of due process that must be present at the hearing are set forth in 24 C.F.R. § 866.53(d) (1978).

will do so only when the whole writing and the circumstances surrounding its making evidence the parties' knowledge of and assent to each term.

Where the document referred to is not in existence at the time the principal contract is made, the enforceability of the incorporated terms may be jeopardized. Where the principal agreement contains the essential elements of a valid contract, and further binds the parties to terms to be established by one party in futuro, the danger exists that the critical elements of knowledge of, and assent to, the additional terms will be missing. See *Guy Pine, Inc.* v. *Chrysler Motors Corporation*, 201 Kan. 371, 440 P.2d 595 (1968). If the provisions to be incorporated will only explain or particularize the obligations of the parties under the principal contract, there is no obstacle to the enforcement of those supplemental provisions. But where the added terms, established by one of the parties, modify or contradict a material term of the original valid contract, the incorporated terms must fall.

A party to a contract may agree to comply with reasonable and necessary regulations that will be promulgated by the other party to the contract where the regulations to be added do not offend the contract principles discussed above. Such agreements are common in long-term contracts, especially where living accommodations are involved. In contracts with educational institutions, for example, a student often agrees to abide by all school regulations in existence and to be adopted. See, e.g., *Mahavongsanan* v. *Hall*, 529 F.2d 448 (5th Cir. 1976). The critical factor in determining whether such provisions are valid is whether an ascertainable standard for the promulgation of the new regulations is set forth in the principal agreement or can be inferred therefrom. See *Buttny* v. *Smiley*, 281 F. Supp. 280 (D. Colo. 1968); *Zanders* v. *Louisiana*

*State Board of Education,* 281 F. Sup. 747 (W.D. La. 1968). That standard, if sufficiently articulated, will provide a substitute for a present knowledge of and assent to the subsequently adopted provisions.[3] Indeed, the lease executed by the parties before us contains a general standard governing the regulations to be promulgated.[4] But the lease also contains an express provision applicable to a termination for "good cause." Any regulation promulgated by the housing authority that modifies or contradicts this express provision of the lease is not enforceable under established rules of contract law. The bypass regulation is in direct conflict with the termination procedures in the lease, and, hence, cannot become a part of the lease under the theory of incorporation by reference.

## II

Because of the well-recognized principle that a judgment, though based on erroneous grounds, will be sustained if otherwise correct; *Morris* v. *Costa,* 174 Conn. 592, 597–98, 392 A.2d 468 (1978); *Powers* v. *Common Council,* 154 Conn. 156, 161, 222 A.2d 337 (1966); Maltbie, Conn. App. Proc. § 36; we must determine whether another legal theory could support the judgment.

An examination of the regulations that contain the grievance procedure bypass reveals an intention of the federal department of housing and urban development to replace the grievance procedure in effect before February 16, 1977, with a new proce-

---

[3] In an analogous situation, the General Assembly has conferred upon the owners of mobile home parks the power to, "from time to time, . . . adopt a rule or regulation, however described, concerning the resident's use and occupancy of the premises." General Statutes § 21-70 (b). The statute then goes on to set forth the standard with which the regulations must comply.

[4] The lease provides: "Tenant agrees to abide by such necessary and reasonable regulations as may be promulgated by Lessor for the benefit and well being of the housing project and the tenants."

dure. See 24 C.F.R. § 866.52 (1978). The prefatory section of subpart B — Grievance Procedures and Requirements provides: "The grievance procedure provided by this Subpart shall be incorporated in the dwelling leases identified as subject to [regulations governing public housing agencies]." Id., § 866.50. Although the section requiring the public housing agency to adopt the procedures set forth in §§ 866.53 — 866.58 includes the requirement that the agency do so by adopting a regulation so providing; see 24 C.F.R. § 866.52; the bypass section, 24 C.F.R. § 866.51(a)[5] contains no such requirement. Section 866.51(a) simply gives the public housing agency the power to exclude from its grievance procedures any termination based upon a tenant's threat to the health or safety of other tenants and agency employees, provided a full judicial hearing prior to eviction is required by state law.

The Connecticut Supreme Court has often recognized the principle that the law as it exists at the time a contract is made becomes a part of the contract "and must be read into it just as if an express provision to that effect were inserted therein, except where the contract discloses a contrary intention." *Ciarleglio* v. *Benedict & Co.,* 127 Conn. 291, 293, 16 A.2d 593 (1940); see *State* v. *American News Co.,* 152 Conn. 101, 111–12, 203 A.2d 296 (1964); *Peoples Savings Bank* v. *Corrado,* 151 Conn. 388, 390, 198 A.2d 209 (1964). This constructive condition does not depend on the intent of the parties, but is

---

[5] Section 866.51(a) of the Code of Federal Regulations provides: "The PHA [public housing agency] grievance procedure shall be applicable to all individual grievances as defined in § 866.53 of this Subpart between the tenant and the PHA, *Provided,* that in those jurisdictions which require that, prior to eviction, a tenant be given a hearing in court containing the elements of due process, as defined in § 866.53(d), the PHA may exclude from its procedure any grievance concerning an eviction or termination of tenancy based upon a tenant's creation or maintenance of a threat to the health or safety of other tenants or PHA employees."

implied by law. 3A Corbin, Contracts § 632. Not only is the law that exists at the time the contract is made incorporated therein, so too is the law as it exists when the contract is performed. See 17 Am. Jur. 2d, Contracts § 257; 17A C.J.S., Contracts § 330.

Because the power to exclude a dispute from the normal grievance procedure was conferred by law upon the housing authority where health and safety are in jeopardy, the lease was so modified to include that power. See generally annot., 17 A.L.R.2d 704. The court did not err in concluding that the housing authority did not have to comply with the termination procedure set forth in the lease.

## III

The defendant properly claims that a public housing tenant may not be deprived of his continued tenancy without first having been afforded the due process safeguards mandated by the federal constitution. See *Escalera* v. *New York City Housing Authority*, 425 F.2d 853, 860–61 (2d Cir. 1970). The fundamental requisites of due process of law are notice and an opportunity to be heard. *Fuentes* v. *Shevin*, 407 U.S. 67, 80, 92 S. Ct. 1983, 32 L. Ed. 2d 556 (1972). The hearing must be "at a meaningful time and in a meaningful manner." *Armstrong* v. *Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965). These principles require that a tenant in a public housing project have timely and adequate notice detailing the reasons for a proposed eviction and an effective opportunity to defend by cross-examining witnesses and providing evidence and argument. Under our summary process statute a tenant is afforded a full judicial hearing to determine the right to possession of the premises. The defendant contends that the housing authority's failure to conduct an informal conference deprived

her of due process of law. The right to due process does not require two hearings, however, and as long as a full judicial hearing is conducted prior to the threatened deprivation, the federal constitution has not been offended. See *Goldberg* v. *Kelly,* 397 U.S. 254, 267, 90 S. Ct. 1011, 25 L. Ed. 2d 287 (1970). The defendant was fully apprised of the grounds for the proposed eviction and was given an adequate opportunity to respond to them. She was not deprived of due process of law.

## IV

The defendant's final claim is that the court erred in finding that the defendant was a threat to the health and safety of the other tenants. This claim requires us to examine the evidence presented at trial to determine whether the finding was based on sufficient evidence. *Young Men's Christian Assn.* v. *Zemel Bros.,* 171 Conn. 310, 312, 370 A.2d 937 (1976). The transcript is replete with evidence of the defendant's creation and maintenance of a health hazard, including testimony of the housing project manager, a housing inspector for the city of Hartford, and a tenant in the dwelling complex. Under the circumstances, the finding will not be altered.

There is no error.

In this opinion A. HEALEY and PARSKEY, Js., concurred.