**The TRAVELERS INSURANCE COMPANY, Plaintiff and Counter-Defendant,**

v.

**The HANDLEMAN COMPANY, Defendant and Counter-Plaintiff.**

**Civ. No. 91–CV–70948–DT.**

United States District Court, E.D. Michigan, S.D.

July 13, 1992.

**580**

Thomas M. Douglas, Southfield, Mich., for plaintiff.

Gregory I. Thomas, Detroit, Mich., for defendant.

## MEMORANDUM OPINION AND ORDER

ANNA DIGGS TAYLOR, District Judge.

This complaint and countersuit concern the amount of premium due on an automobile insurance policy sold to the Handleman Company ("Handleman") by the Travelers Insurance Company ("Travelers") on a retrospective premium basis. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. The Defendant and Counter–Plaintiff, Handleman, is a music distributor with a fleet of vehicles throughout the country. A third participant in the events which led to this suit, which has been dismissed as a third-party defendant, is Poyle & Associates ("Poyle"), a Michigan insurance agency licensed by Travelers which brokered the transaction with Handleman, one of Poyle's customers. This memorandum sets forth the Court's findings of fact and conclusions of law.

In early 1986, the Poyle agency prepared specifications for bids on Handleman's insurance requirements, including minimum uninsured motorist coverage in all fifty states. The decision had been made to place Handleman's business with one of the major national companies because Handleman's activities had spread nationwide and greater expertise among the several states had become necessary than the previous smaller Michigan-based insurer could offer. Poyle presented the Handleman specifications submission to Travelers on April 15, 1986. Travelers made a successful offer on the proposal and ultimately paid Poyle a commission on the insurance sold to Handleman. It is undisputed that it was the mutual intent of the parties that Travelers would provide Handleman, *inter alia*, with the minimum required uninsured motorist coverage in each of the fifty states.[1]

---

1. In Louisiana, the minimum amount of uninsured motorist insurance allowed by statute was $20,000.00, if the insured signed a form and filed it with the Commissioner of Insurance. If the form is not signed and filed, the minimum amount of uninsured motorist coverage is $250,000.00. LA–RS 22:1406(D)(1).

Travelers commenced preparation of an insurance agreement, and coverage became effective July 1, 1986. On July 18, 1986, the Travelers account sales executive assigned to the Handleman account wrote her request to the policy issuance department for a policy providing Handleman with $20,000.00 in uninsured motorist coverage in Louisiana.

On September 3, 1986, Travelers completed and mailed the Business Auto Policy here in suit to Poyle. According to its terms, it provided Handleman with $20,000.00 in uninsured motorist coverage in Louisiana.

On that same date, however, the Travelers account executive was notified by the Travelers policy issuance department that, in order to secure the contractual uninsured motorist coverage of $20,000.00, which was lower than the Louisiana liability limit of $250,000.00, Handleman must sign a designated form and return it to Travelers for filing with the Louisiana Insurance Commissioner. The account executive testified that she interpreted this request to be a mere formality of no urgency, and that the policy issuance department conveyed no necessity of immediacy to her whatsoever.

Travelers' routine practice was to send all documents requiring Handleman's signatures to the agent, Poyle. At trial, Travelers produced a copy of a letter to Poyle dated September 29, 1986, which stated that it enclosed several forms and referred to their necessity for "uninsured motorist state applications."[2] Travelers' account analyst could not recall, at trial, whether the "uninsured motorist state applications" enclosed had included the Louisiana form, or not. The letter did not mention the necessity that any form be signed and returned for filing in Louisiana or elsewhere.

The account executive wrote to the Poyle agency again on December 4, 1986. This letter referred to an "attached Louisiana form which must be filed with the Louisiana Commission." Poyle has acknowledged receipt of this letter and the Louisiana form with it, but not before this time.

Poyle had developed a customary procedure for procuring any necessary signatures from Handleman. An effort was made to avoid constant calls or visits on small matters. The Poyle president would meet with Handleman's controller on a regular basis, usually quarterly, and would make a presentation of all pending matters. The controller would then sign documents as they were presented, explained, and discussed. In accordance with this routine, the Louisiana form was not presented for signature until February 3, 1987. The Poyle president had never considered the Louisiana form significant or urgent, as nothing on its face indicated that it *must* be filed to become effective.

According to Poyle, despite its experience in the insurance industry, it had never heard of any requirement that a form be signed and returned for filing. He further testified that he had relied upon Travelers' expertise to know of and to meet Handleman's nationwide needs, and had requested the bid from Travelers, in fact, because of the greater degree of national sophistication it offered than the prior insurer. The Court finds that Travelers never told Poyle that the $20,000.00 uninsured motorist limit was contingent upon Handleman's signing and returning the form for filing with the Louisiana Insurance Commissioner and that the alternative was paying for $250,000.00 coverage in Louisiana instead, if a loss occurred.

The Louisiana form, as well as a number of forms for other states, was signed by Handleman's controller at the meeting of February 3, 1987. The next day, Poyle's vice president forwarded them to Travelers.

This series of events would not be noteworthy were it not for an automobile accident which occurred on January 15, 1987 in Louisiana and resulted in serious injury to a Handleman employee by an uninsured motorist.

---

**2.** Poyle's vice president did not deny that she may have received this letter, but she has no record of receiving the Louisiana form or forms from any other states before December of that year.

The requisite Louisiana limitation of coverage form was not filed until Travelers had received it back from Poyle in February and then sent it to Louisiana. Such limitations are not permitted retroactively. Therefore, as the form was not on file at the time of the accident, the coverage was not limited to $20,000.00 and Travelers was required to pay a total of $154,010.00 in losses and expenses in settlement of the claim, in 1990.

This policy had been written on a retrospective premium basis, and premiums were partly based upon the actual losses experienced each premium year. The $154,010.00 Louisiana loss was included in Travelers' premium calculations for both the 1989 and 1990 adjustment periods, and Travelers now claims that Handleman has breached the policy by refusing to pay the additional $62,000.00 in premiums demanded because of the Louisiana loss. Handleman, conversely, demands the return of $90,000.00. It counterclaims that Travelers contracted to provide uninsured motorist coverage of no more than $20,000.00 in Louisiana and breached its obligations by failing to do so.

Although Travelers argues the negligence of the alleged agent of its insured, this lawsuit must be governed by contract law. Both parties sue to enforce their perceived contractual rights. Travelers' complaint is entitled "Suit for Money Damages Founded Upon Breach of Contract," and references the July 1, 1986 insurance policy, which it delivered that September.

■ In Connecticut law, which the parties agreed was to govern this insurance agreement, the general rules of contract construction apply when constructing the terms of an insurance policy. *Aetna Casualty and Surety Co. v. CNA Ins. Co.*, 221 Conn. 779, 606 A.2d 990, 993 (Conn.1992). The task of the Court is to ascertain and effectuate the intent of the parties by a fair and reasonable construction of the written words, in light of the circumstances surrounding execution of the writing and in light of the object of the parties in executing the contract. *Marcus v. Marcus*, 175 Conn. 138, 394 A.2d 727, 729 (1978). Sim-

ilarly, when a contract refers to or incorporates another document, the Court is required to look at both documents in ascertaining the intent and agreement of the parties. *Housing Authority of City of Hartford v. McKenzie*, 36 Conn.Sup. 515, 412 A.2d 1143, 1145 (1979).

Terms may not be added to a contract under the guise of interpretation. *Ruscito v. F–Dyne Electronics Co., Inc.*, 177 Conn. 149, 411 A.2d 1371, 1381 (1979). In the absence of tortured interpretations, this insurance contract on its face reflects the intent of the parties. Handleman submitted specifications of its insurance needs and Travelers returned a proposal for the minimum amount of uninsured motorist insurance in all the states, including Louisiana. They entered into a contract for insurance which by endorsement limited the coverage in Louisiana to $20,000.00. There was no ambiguity. "Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." *Aetna, supra* 606 A.2d at 993.

■ If, however, the policy had been ambiguous, moreover, that ambiguity must be construed against Travelers. *Griswold v. Union Labor Life Ins. Co.*, 186 Conn. 507, 442 A.2d 920, 923 (1982), held that a Court should construe an ambiguity in the insurance policy to favor the insured. Ambiguities are always to be resolved against the party responsible for drafting the document. *Cody v. Remington Elec. Shavers, Div. of Sperry Rand Corp.*, 179 Conn. 494, 427 A.2d 810, 812 (1980).

■ The facts of this case most certainly support such a conclusion as it was only Travelers, of the three parties here involved, which was aware of the filing requirement in Louisiana and which could foresee the risk of a far greater loss intervening in case of delay between the policy's effective date and the requisite Louisiana filing. Because premiums are retroactively calculated, it may not unilaterally change the contract to shift the burden of its failure to the insured.

Connecticut law mandates that a party is entitled to rely upon its written contract as the final integration of its rights and duties. *Zullo v. Smith*, 179 Conn. 596, 427 A.2d 409, 412 (1980). The plain language of this contract provides that Handleman was buying a maximum of $20,000.00 of uninsured motorist coverage in Louisiana effective July 1, 1986. There was no language of limitation or condition.

Nevertheless, Travelers also argues here that the Louisiana statute imposed a condition precedent upon the contract, providing that Handleman must buy a limit of $250,-000.00 worth of uninsured motorist insurance if a loss occurred before it had signed the insurance form and Travelers had filed it. "A condition precedent is a fact or event which the parties intend must exist or take place before there is a right to performance." *Christophersen v. Blount*, 582 A.2d 460, 462, 216 Conn. 509 (Conn.Super.Court 1990). The requirement of a filed form was not included in the insurance agreement, the policy, or the endorsement. Indeed, only the insurer was aware of it. Therefore it was expressly prohibited by the integration clause set forth in the insurance agreement, which states in pertinent part that:

> This AGREEMENT, its exhibits, and the SAILOR On–Line Service Agreement *represent the entire agreement between us* ... [t]hey replace any earlier written documents, or written or oral representations by either party.

(Emphasis supplied).

■ "Whether a provision in a contract is a condition the nonfulfillment of which excuses performance depends upon the intent of the parties, to be ascertained from a fair and reasonable construction of the language used in the light of all the surrounding circumstances when they executed the contract." *Camp Street Assoc. v. A. Aiudi & Sons*, 1991 WL 71397 (Conn.Super.1991).

The parties here clearly intended no such condition precedent. Travelers' special accounts marketing/underwriting executive testified that its intention was to provide Handleman with the minimum of uninsured motorist insurance in Louisiana, as well as in every other state. Handleman's submission, as well as Travelers proposal, both hinged upon insuring Handleman with no more than basic uninsured motorist insurance coverage. The declaration sheet of the insurance policy firmly states that the limit on Handleman's Louisiana uninsured motorist coverage was $20,000.00.

Travelers' argument concerning conditions precedent is totally thwarted, moreover, by its own admission that, if the accident had occurred between July 1, 1986 and September 29, 1986, the date on which Travelers *claims* to have first sent the Louisiana form to Handleman, Travelers would have been responsible for the loss, *itself.* This acknowledgement that it was remiss in its own contractual obligation until September cannot be tied to a claim that Handleman failed to perform conditions precedent thereafter.

If Handleman, which had not received or returned a signed insurance form, had a limit of $20,000.00 of uninsured motorist coverage in July and September, then logic dictates that the same contract must have obtained through January, 1987, the time of the loss. The admission of responsibility for the period between July and September, 1986 totally defeats the simultaneous claim that form filing constituted a *condition precedent* to the contract which Handleman, the uninformed insured, was required to perform thereafter.

The negligence concept which Travelers has also attempted to introduce against the insured is similarly inapposite. Even if, assuming arguendo, the filed form had been a condition precedent, Travelers would in the end still be responsible for the additional loss. Neither the policy, the agreement, the endorsement, nor the September or December letters advised Handleman (or the broker, Poyle) of the importance of expedient signing and returning for filing of the Louisiana form. "In the absence of a specified time limit to comply with a condition precedent, the law implies a reasonable time." *Christophersen, supra*, 582 A.2d at 463.

Travelers' policy issuance department was fully advised of the necessity of returning the signed form to the Louisiana Insurance Commissioner. The day before the policy's effective date, on July 1, 1986, the policy issuance department requested that the Travelers account analyst obtain the signature of Handleman's representative. Two months later, on September 3, 1986, Poyle received the insurance policy. It was not accompanied by the insurance form or by a request that Poyle solicit a signature from Handleman. Travelers sent the insurance form to Poyle either on September 29 or December 4, 1986. No urgency was indicated, whatsoever.

Even Travelers' policy issuance department did not inform its own account executive that time was of the essence in the signing and filing of the insurance form. Its memorandum merely states that the department planned to microfilm the original insurance form and keep a photocopy in their office. It never indicated to the account executive that the form had to be sent to the Louisiana Insurance Commissioner in order to limit coverage.

Accordingly, the account analyst did not urge Poyle to secure Handleman's signature forthwith. Poyle followed its usual procedures in meeting quarterly with Handleman's controller and obtaining his signature on various documents. "Where the agreement does not state that time is of the essence, it is presumed not to be unless the parties have expressed a contrary intent." *Mihalyak v. Mihalyak*, 11 Conn. App. 610, 529 A.2d 213, 217 (1987). Here, Travelers never informed Poyle that Handleman's limited uninsured motorist insurance would only be effective as of the date the Louisiana form was signed. Nor did Travelers directly write or call Handleman to warn of the consequences of delayed return of the form to the Louisiana Insurance Commissioner.

Corbin has stated that "[a] reasonable time for performance by one party is never less than that to which the other party has expressed assent." 3A Corbin, Contracts § 723. p 383. "This meeting of the minds and mutuality of assent are the most basic ingredients of a contract." *Housing Authority, supra,* 412 A.2d at 1145.

In addition, Travelers drafted the insurance agreement and also provided the endorsement concerning the limitations of uninsured motorist coverage. The added settlement costs of the accident which occurred in January, 1987, were foreseeable only to the insurer, the drafter of the policy, and not the insured. It was incumbent upon Travelers to have incorporated satisfaction of the Louisiana statute into the policy and provided for such an eventuality if it hoped later to shift the loss which it attempts to shift here.

■ Even if Handleman had agreed that completion and filing of the insurance form was to be a condition precedent to paying only for the limit of $20,000.00 uninsured motorist insurance, Traveler's four (or two-and-a-half month) delay in forwarding the form to Poyle, and its omission of language of urgency, excused Handleman's obligation to timely return the signed form.

If the question of Poyle's negligence as agent for Handleman were to be addressed, as Travelers also argues, we must apply Connecticut law. Connecticut law is reasonably related to this transaction for the reason that Travelers maintains its principle place of business there, the contracts between the parties were drafted in Connecticut and affected interests in every State. Poyle executed its contract as Travelers' agent in Connecticut. It is from Connecticut that Travelers paid commissions to Poyle for this transaction. Finally, the parties have agreed that Connecticut law must govern.

■ In Connecticut, the existence of an agency relationship is a question of fact. *Cohen v. Meola,* 184 Conn. 218, 439 A.2d 966, 967 (1981). To establish the existence of a principal and agent relationship, Connecticut law requires:

1. Manifestation by the principal that the agent will act for him;

2. Acceptance of the undertaking by the agent;

3. Understanding by the parties that the principal is in control.

*Beckenstein v. Potter*, 191 Conn. 120, 464 A.2d 6, 13–14 (1983).

While Poyle assisted Handleman with respect to the selection of an insurance carrier for its fleet vehicles, it is a licensed agent for Travelers and was compensated by Travelers for this brokerage. Moreover, it is Poyle's conduct in handling the insurance form that is at issue here. In that regard, Poyle was the agent of Travelers, which clearly manifested that Poyle would act as its agent by sending the form and asking that the agency get it signed. Poyle, in taking the forms to Handleman to get them signed, accepted the undertaking.

It is further evident that Travelers was in control of this chain of events. Travelers could have sent the form directly to Handleman or told Poyle to make certain that Handleman signed the form right away. However, Travelers relied on Poyle to do its bidding and obtain the signed forms from Handleman. This was Travelers' choice and not Poyle's option or within Handleman's control at all. Accordingly, this Court finds that Poyle acted as Travelers' agent with regard to these events.

Taking this argument one step further, the negligence, if any, in this matter still cannot be imputed to Poyle, but is directly attributable to Travelers for all of the reasons outlined above. Only Travelers, the one party to this transaction who was aware of the Louisiana statutory requirements, can be held responsible for seeing that they were met.

However, as stated above, this is a case based upon contractual claims. The Court finds that Handleman did not breach the insurance contract when it refused to pay the enlarged retrospective premium. The policy called for Travelers to provide Handleman with Louisiana uninsured motorist insurance with a limit of $20,000.00 and it was silent as to the contingencies possibly imposed by state statutory requirements. Accordingly, Travelers should not have included the $134,010.00 it paid beyond that $20,000.00 limit when it calculated the retrospective premium for 1989 and 1990. The Court finds that Travelers has breached the insurance contract and must pay Handleman the return premiums of $52,000.00 for the year 1989 and $38,000.00 for the year 1990, as demanded.

Judgment will enter for Defendant and Counterplaintiff.

SO ORDERED.