Lawrence FRIEDMAN; as receiver of the assets of John Z. DeLorean; C. William Garratt; C. William Garratt & Assocs., P.C.; and GA II, P.C., Plaintiffs,

v.

**FREIDBERG LAW CORPORATION,**
Defendant.

No. Civ.A. 96–40053.

United States District Court,
E.D. Michigan,
Southern Division.

April 9, 1999.

---

C. William Garratt, Garratt Law Firm, Bloomfield Hills, MI, for plaintiffs.

Mark S. Koppelman, Michael K. Lee, Amberg, McNenly, Southfield, MI, for defendant.

### *ORDER DENYING DEFENDANT'S RENEWED MOTION FOR SUMMARY JUDGMENT*

GADOLA, District Judge.

Presently before the Court is a renewed motion for summary judgment filed on September 11, 1998 by defendant Freidberg Law Corporation (hereinafter "FLC" or "Freidberg").[1] Previously, on May 29, 1998, this Court issued a memorandum opinion and order denying without prejudice defendant's original motion for summary judgment and allowing defendant to renew its motion after the close of additional discovery. The May 29, 1998 opinion extended discovery on the following issue: whether defendant was bound by the injunction issued by the Honorable David F. Breck of Oakland County Circuit Court pursuant to Michigan Court Rule 3.310(C)(4). Plaintiffs responded to defendant's renewed motion for summary judgment on September 28, 1998. A final pretrial conference is scheduled for May 24, 1999.[2]

For the reasons set forth below, the Court will deny defendant Freidberg Law Corporation's renewed motion for summary judgment.

### I. Factual Background

The following factual background is taken from the recitation of facts set out in this Court's previous memorandum opinion and order issued May 29, 1998.

On June 30, 1993, the Honorable David F. Breck of Oakland County Circuit Court entered a $125,000 judgment, confirming a previous arbitration award in favor of C. William Garratt & Associates, P.C. and GA II, P.C., and against John Z. DeLorean (Civil Action No. 91–416860–CZ). Lawrence Friedman, plaintiff herein, was appointed receiver for DeLorean and his assets. On October 27, 1993, Judge Breck entered an order (hereinafter the "Breck Injunction") restraining DeLorean

---

1. On November 17, 1998, this Court granted plaintiffs' motion to adjourn the hearing on defendant's renewed motion for summary judgment pending Magistrate Judge Pepe's ruling on certain discovery issues. Following the magistrate judge's ruling, on March 4, 1999, plaintiffs submitted a supplemental brief in response to defendant's renewed motion for summary judgment. On March 12, 1998, defendant submitted its own supplemental brief.

2. Pursuant to Local Rule 7.1(e)(2) (E.D.Mich. 1998), this Court shall decide the instant motion on the briefs and without the necessity of oral argument.

from making or suffering any transfer or other disposition of, or interference with, any property now held or hereafter acquired by him, or by others in trust or otherwise, or any debt due or to become due to him, not exempt by law from application of the satisfaction of that certain judgment entered by this Court on June 30, 1993 . . . .

Exh. A to defendant's brief in support of renewed motion for summary judgment, p. 2.

In another matter, wholly unrelated to the previously-described state court matter, DeLorean was sued by Attorney Mayer Morganroth in the United States District Court for the Eastern District of Michigan. Defendant FLC, a California corporation, was lead counsel for DeLorean in that lawsuit. In connection with that litigation, DeLorean transferred to FLC approximately $890,000 between October 1993 and May 1994. Plaintiffs in the instant suit allege that FLC, acting as an agent and attorney for DeLorean, and/or in active concert and participation with DeLorean, encouraged and permitted DeLorean to transfer such monies *in violation of* the Breck Injunction.[3]

## II. Procedural History

In April 1995, plaintiffs filed a two-count complaint against defendant FLC. In Count One, plaintiffs allege conversion, and specifically that FLC encouraged DeLorean to transfer monies to FLC in violation of the Breck Injunction, thereby converting plaintiffs' right to be paid first from DeLorean's assets. In Count Two, plaintiffs allege tortious interference with economic expectancy. In particular, plaintiffs allege that FLC, when it received money from DeLorean, tortiously interfered with plaintiffs' expectancy to be paid first from DeLorean's assets. *Both* plain-

tiffs' claims are predicated upon an alleged violation of the Breck Injunction.

On May 29, 1998, this Court issued a memorandum opinion and order, denying without prejudice defendant's original motion for summary judgment, as well as denying plaintiffs' motion to bar defendant from asserting unpleaded avoidances or affirmative defenses at trial. With respect to defendant's original motion for summary judgment, this Court rejected the argument that because the transfers of money took place outside of the State of Michigan, they were thus outside the reach of the Breck Injunction. *See* May 29, 1998 Op. and Order, pp. 8–10. Specifically, the Court held that defendant's reliance on *Emmons v. Emmons*, 136 Mich.App. 157, 355 N.W.2d 898 (1984) was misplaced.

In *Emmons*, the Michigan Court of Appeals, while holding that a Michigan court does not have jurisdiction over property located in Florida, nonetheless affirmed that a Michigan court could compel a defendant over whom personal jurisdiction existed to transfer, sell or otherwise dispose of his Florida property. *See id.* at 166, 355 N.W.2d 898 (citing *Niemetta v. Teakle*, 210 Mich. 590, 178 N.W. 37 (1920)). As a consequence, this Court concluded that Judge Breck had the power to enjoin DeLorean, his agents, attorneys and/or those acting in active concert with them from making or suffering any transfer or other disposition of or interference with property located outside of Michigan. *See* May 29, 1998 Op. and Order, p. 10.

Defendant, however, asserted a second argument in support of its motion for summary judgment: that defendant FLC was not bound by the Breck Injunction. Consideration of this argument was postponed because plaintiffs insisted that they required more discovery on the factual issues relevant to this defense. According-

---

**3.** In addition to the Breck Injunction, plaintiffs also obtained a separate judgment and a separate injunction in another legal proceeding before the Honorable Gene Schnelz of Oakland County Circuit Court. That injunc- tion likewise restrains DeLorean from distributing any assets. *See* Exh. B to defendant's brief in support of renewed motion for summary judgment.

ly, the Court allowed the parties additional time to conduct discovery on this issue. After the close of this additional discovery period, defendant submitted a "renewed" motion for summary judgment filed September 11, 1998. As mentioned above, on November 17, 1998, this Court granted plaintiffs' motion to adjourn the hearing on defendant's renewed motion pending Magistrate Judge Pepe's ruling on certain discovery issues. Following the magistrate judge's ruling, on March 4, 1999, plaintiffs submitted a supplemental brief in response to defendants' renewed motion for summary judgment. On March 12, 1998, defendant submitted its own supplemental brief.

### III. Legal Standard

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (citation omitted). In evaluation a motion for summary judgment, the court must view the evidence in a light most favorable to the nonmovant, as well as draw all reasonable inferences in the nonmovant's favor. *See U.S. v. Diebold*, 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986).

This burden "may be discharged by showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed. R.Civ.Proc. 56(e); *Gregg*, 801 F.2d at 861.

To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*,

> [t]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The evidence itself need not be the sort admissible at trial. *Ashbrook v. Block*, 917 F.2d 918, 921 (6th Cir.1990). However, the evidence must be more than the nonmovant's own pleadings and affidavits. *Id.*

### IV. Analysis

The crucial issue presented is whether defendant Freidberg Law Corporation was bound by the terms of the Breck Injunction. Defendant insists that injunctions only bind *parties* to the underlying law suit and further that it is uncontroverted that defendant was not a party to the previous state court litigation. Plaintiff, on the other hand, maintains that it is well-settled that injunctions bind not only parties to an action, but also their officers, agents, and attorneys, and those in active concert or participation with them who receive actual notice of the injunction.

Plaintiff further asserts that there exist several genuine issues of material fact still outstanding which preclude summary judgment in the instant case.

Pursuant to Michigan Court Rule 3.310, concerning the form and scope of injunctions, "[a]n order granting an injunction or restraining order ... is binding only on the parties to the action, their officers, agents, servants, employees, and attorneys, and on those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." M.C.R. 3.310(C)(4). Federal Rule of Civil Procedure 65, upon which the Michigan court rule is modeled, likewise provides that "[e]very order granting an injunction ... is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Fed.R.Civ. Proc. 65(d).[4]

Citing the above rules, plaintiffs argue that defendant as DeLorean's agent and attorney who had notice of the state court injunctions is thereby bound by them. Plaintiff further points out that the requirements of due process would not be offended by holding that defendant was bound by the injunctions. *See Commissioner of Insurance v. Arcilio*, 221 Mich. App. 54, 561 N.W.2d 412 (1997). In *Arcilio*, the Michigan Court of Appeals ruled that a non-resident who was not a party to an action in Michigan would be bound by the state court injunction, so long as there existed "minimum contacts" with the State of Michigan "such that enforcement of the injunction does not offend traditional notions of fair play and substantial justice." *Id.* at 73, 561 N.W.2d 412 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 319, 66 S.Ct. 154, 158, 159–60, 90 L.Ed. 95 (1945)). The *Arcilio* court articulated the following relevant factors to be applied in determining whether sufficient minimum contacts exist:

(1) the defendant must be found to have purposefully availed itself of the privilege of conducting activities in Michigan,

(2) the cause of action must arise from those activities, and

(3) the exercise of jurisdiction must be reasonable.

*Arcilio*, 221 Mich.App. at 74, 561 N.W.2d 412.

Plaintiff maintains that, applying the factors set forth in *Arcilio*, defendant had more than sufficient minimum contacts with Michigan to satisfy any due process concerns. First, defendant purposefully availed itself of the privilege of conducting activities in the state by representing DeLorean in state court proceedings located in Detroit, Michigan. Second, the instant action arose from defendant's representation of DeLorean in Michigan. Specifically, plaintiff points to DeLorean's paying of legal fees to defendant in alleged violation of the state court injunctions. Finally, although plaintiff does not address this factor, the exercise of personal jurisdiction over Freidberg by the state court would had to have been reasonable.[5] The Court

---

**4.** The U.S. Supreme Court has noted that Fed.R.Civ.Proc. 65(d)

is derived from the commonlaw doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in "privity with them, represented by them or subject to their control. In essence it is that defendants may not nullify a decree by carrying out prohibited acts through aiders and abettors, although they were not parties to the original proceeding."

*Regal Knitwear Co. v. Nat'l Labor Relations Bd.*, 324 U.S. 9, 14, 65 S.Ct. 478, 89 L.Ed. 661 (1945); *see also Ex parte Lennon*, 166 U.S. 548, 555, 17 S.Ct. 658, 41 L.Ed. 1110 (1897).

**5.** In addition, plaintiffs cite *Waffenschmidt v. MacKay*, 763 F.2d 711 (5th Cir.1985), *reh. denied*, 770 F.2d 1081, *cert. denied*, 474 U.S. 1056, 106 S.Ct. 794, 88 L.Ed.2d 771, wherein the Fifth Circuit held two non-resident, nonparties in contempt for violating an injunction prohibiting the defendant and all persons act-

notes that there does not appear to be any dispute that defendant FLC had sufficient minimum contacts with Michigan necessary to support a state court's exercise of personal jurisdiction over the defendant corporation.

Defendant asserts that as a matter of law it cannot be bound by the state court injunctions because it was not a party therein, relying for this proposition upon the U.S. Supreme Court's recent decision in *Baker v. General Motors Corp.*, 522 U.S. 222, 118 S.Ct. 657, 139 L.Ed.2d 580 (1998). In *Baker*, the issue was whether the Constitution's full faith and credit clause precluded the Bakers, who were not parties to a Michigan proceeding, from obtaining the testimony of Ronald Elwell in their Missouri wrongful death action. *See* 118 S.Ct. at 663 (citing U.S. CONST., Art. IV, § 1). Defendant GM argued that the Bakers could not obtain Elwell's testimony due to an injunction issued by a Michigan court which barred Elwell from testifying in any future proceedings against the automobile company. The Supreme Court rejected defendant's argument. Justice Ginsburg, writing for the majority, held that

> Michigan's decree could operate against Elwell to preclude him from volunteering his testimony ... But a Michigan court cannot, by entering the injunction to which Elwell and GM stipulated, dictate to a court in another jurisdiction that evidence relevant in the Bakers' case—a controversy to which Michigan is foreign—shall be inadmissible. This conclusion creates no general exception to the full faith and credit command, and surely does not permit a State to refuse to honor a sister state judgment based on the forum's choice of law or policy preferences. Rather, we simply recognize that, just as the mechanisms for enforcing a judgment do not travel with

the judgment itself for purposes of Full Faith and Credit, *see McElmoyle ex rel. Bailey v. Cohen*, 13 Pet. 312, 10 L.Ed. 177 (1839); *see also* Restatement (Second) of Conflict of Laws § 99, and just as one State's judgment cannot automatically transfer title to land in another State, *see Fall v. Eastin*, 215 U.S. 1, 30 S.Ct. 3, 54 L.Ed. 65 (1909), similarly the *Michigan decree cannot determine evidentiary issues in a lawsuit brought by parties who were not subject to the jurisdiction of the Michigan court.* Cf. *United States v. Nixon*, 418 U.S. 683, 710, 94 S.Ct. 3090, 3108–3109, 41 L.Ed.2d 1039 (1974) ("[E]xceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.").

*Baker*, 118 S.Ct. at 667 (footnote omitted) (emphasis added). In other words, a Michigan court could not determine evidentiary issues brought by parties who were not subject to the jurisdiction of the Michigan court. This was an improper use of collateral estoppel and interfered with another state's subpoena power.

*Baker* is distinguishable from the case at bar. While *Baker* states the general rule that an injunction is not binding on persons not parties to the litigation, there is an exception to this general rule which applies in the instant case and which was not relevant in *Baker*. Pursuant to Michigan Court Rule 3.310, as previously discussed, an injunction is binding on persons who are not parties but who receive actual notice of the injunction and who are in active concert or participation with the parties to the action. Under M.C.R. 3.310, if defendant FLC were an agent or attorney of DeLorean (or in active concert or participation with him), then the injunction

ing in concert with him from transferring, concealing, or disposing of any funds received by him from plaintiffs. The Fifth Circuit set forth the following principle: "[n]onparties who reside outside the territorial jurisdiction of a district court maybe subject to that

court's jurisdiction if, with actual notice of the court's order, they actively aid and abet a party in violating that order. This is so despite the absence of other contacts with the forum." *Id.* at 714.

would be binding on defendant FLC, *provided that* FLC had received *actual notice* of the injunction.

■ This Court having found that the *Baker* decision does not preclude plaintiffs' claims must now apply the standard for evaluating motions for summary judgment pursuant to Federal Rule 56. The Court finds that there does exist a genuine issue of material fact as to whether defendant had "actual notice" of the state court injunctions prior to the date the transfer from DeLorean. Defendant claims it was unaware of the state court injunctions prohibiting John DeLorean from transferring any assets until "on or about June 20, 1994." Plaintiff, however, points to the testimony of William M. Donovan, who formerly represented DeLorean in two state court actions and who was co-counsel with defendant in a prior federal district court action, that FLC had notice of at least one of the injunctions as early as February 7, 1994, well before the date of the transfer. Plaintiffs also call to the Court's attention defendant's answers to plaintiffs' interrogatories in which defendant admits to having numerous telephonic contacts with Mr. Donovan's office between November 1993 and January 1994. *See* Exh. A to Plaintiff's Suppl. Brief. As defendant stated in its answers, those contacts included conversations about plaintiff Garratt, the background and facts involving the Garratt arbitration case, and about obtaining and providing DeLorean financial documents to Garratt. This evidence raises a genuine issue of material fact as to whether or not defendant had received actual notice of the injunctions prior to the transfer of assets from DeLorean. Resolution of this issue is for the trier of fact.

■ With respect to the existence of an agency relationship which may have existed between defendant and DeLorean, this is also a question of fact to be decided by the jury.[6] Plaintiffs have met their burden of demonstrating that a genuine issue of material fact exists as to whether defendant acted in active concert and participation with DeLorean in violating the state court injunctions. It is undisputed that at the time of February 7, 1994 meeting between Donovan, Freidberg, Pierce and DeLorean, defendant FLC was an attorney for DeLorean in a federal district court action in Detroit concerning attorney fees owed by DeLorean to other attorneys. In addition, it is undisputed that Donovan was co-counsel with Freidberg in that federal court action and that Donovan represented DeLorean in the state court actions in which the injunctions were issued. Furthermore, it is well-settled that questions as to the existence and/or scope of an agency relationship are questions of fact appropriate for the jury's consideration. *See Meretta v. Peach,* 195 Mich.App. 695, 491 N.W.2d 278 (1992); *Hertz Corp. v. Volvo Truck Corp.,* 210 Mich.App. 243, 533 N.W.2d 15 (1995); *Hart v. Comerica Bank,* 957 F.Supp. 958 (E.D.Mich.1997); *Travelers Ins. Co. v. Handleman Co.,* 797 F.Supp. 579 (E.D.Mich.1992).

■ Defendant lastly asserts that plaintiffs are not able to state a prima facie case with respect to their two claims, to wit: conversion and intentional interference with an economic expectancy. The

---

**6.** Defendant argues that plaintiffs "cannot prove this element [i.e. whether an agency relationship existed]." *See* defendant's brief in support of renewed motion, pp. 9–11. Defendant further argues that "as an initial matter, [plaintiffs] must show that Freidberg's 'agency' is outside the scope of its attorney client relationship." *Id.* The Court disagrees. Such a reading of the court rule ignores the situation, such as may have existed here, where a person acts both as an attorney and as an agent for a party to a lawsuit. These roles certainly may be, and often are, overlapping and are by no means mutually exclusive. In addition, it should be noted that plaintiffs are not required to "prove" this element at this stage of the litigation. Pursuant to Fed.R.Civ.Proc. 56, the burden is instead on defendant, as the movant, to demonstrate the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.,* 801 F.2d 859, 861 (6th Cir.1986). Defendant has not met this burden.

Court disagrees. A conversion is "any distinct act of dominion wrongfully exerted over another's personal property." *Attorney General v. Hermes,* 127 Mich.App. 777, 339 N.W.2d 545 (1983) Here, the personal property claimed to have been converted by defendant Freidberg is plaintiffs' right to be paid first from DeLorean assets. *See Tuuk v. Andersen,* 21 Mich. App. 1, 13, 175 N.W.2d 322 (1969) (holding that intangible personal property can be the subject of conversion). Plaintiffs' claim of entitlement to DeLorean's assets is via the injunctions. As discussed, assuming arguendo that the injunctions were binding on defendant, then plaintiff would have a superior right to the transferred assets.

■ Plaintiffs' second claim is tortious interference with an economic expectancy. The elements of such a claim are: (1) the existence of a valid business expectancy, (2) knowledge of the expectancy on the part of the defendant, (3) an intentional interference causing a breach or termination of the expectancy, and (4) resulting damage to a party whose expectancy has been disrupted. *Michigan Podiatric Medical Ass'n. v. National Foot Care Program, Inc.,* 175 Mich.App. 723, 438 N.W.2d 349 (1989). As with the first claim of conversion, plaintiffs' allegation of a valid business expectancy (i.e., a right to be paid first from DeLorean's assets) as a result of the state court injunctions is dependent upon whether the injunctions were binding on defendant. As the Court has already found, this is a factual issue which deserves the jury's careful consideration.

The Court has determined that plaintiffs' claims are *not* barred as a matter of law. Applying Federal Rule 56, viewing all the evidence in a light most favorable to plaintiffs, as the nonmovants, this Court finds that there are several factual issues remaining which must be determined by the jury. First, there is an issue whether defendant was an agent of DeLorean. If defendant was not, then the question still remains whether defendant qualifies as one who was "in active concert or participation" with DeLorean for purposes of Michigan Court Rule 3.310. Even if defendant is shown not to be either DeLorean's agent or in active concert or participation with him, there still remains the issue of whether defendant qualifies as DeLorean's "attorney," as that term is utilized in Michigan Court Rule 3.310. Clearly, defendant FLC *was* DeLorean's attorney, at least with respect to a proceeding held in federal district court. Defendant has presented no case law to support its claim that serving as an attorney in such capacity exempts FLC from the plain language of the Michigan court rule. Finally, there exists a question of material fact which is relevant to all the above issues. This is whether defendant—as DeLorean's agent, attorney or one in active concert or participation with him—received "actual notice" of the state court injunctions "by personal service or otherwise" pursuant to M.C.R. 3.310(C)(4). Due to the existence of all these genuine issues of material fact, the Court shall deny defendant Freidberg Law Corporation's renewed motion for summary judgment.

### ORDER

NOW, THEREFORE, IT IS HEREBY **ORDERED** that defendant Freidberg Law Corporation's renewed motion for summary judgment is **DENIED.**

**SO ORDERED.**