### SUSAN B. MIHALYAK *v.* JOHN MIHALYAK
### (4670)

HULL, SPALLONE and BIELUCH, Js.

Argued March 12—decision released July 28, 1987

*Charles E. Tiernan III,* for the appellant (defendant).

*Kenneth B. Rubin,* with whom, on the brief, was *Sarah D. Eldrich,* for the appellee (plaintiff).

BIELUCH, J. The defendant appeals from the trial court's granting of the plaintiff's motion to compel performance of judgment and for contempt and attorney's fees. He further appeals from the trial court's denial of his motion for contempt and counsel fees. These motions were filed subsequent to a judgment dissolving the marriage of the parties, dividing the marital assets and awarding alimony to the plaintiff. The defendant claims that the trial court's findings of fact were unsupported by the evidence, misleading and incomplete. Specifically, he alleges that the court's findings were contrary to the oral agreement reached by the parties and incorporated into the judgment. He also claims that the trial court erred in granting to the plaintiff an award of $500 as attorney's fees. We find no error.

The trial court could reasonably have made the following factual findings. The marriage of the parties was dissolved by judgment on February 26, 1985. Pursuant to an oral agreement of the parties, the following provisions for property division were incorporated into the judgment of dissolution: "The Husband shall quitclaim to the Wife his interest in the real property known as 101 Route 148, Killingworth, Connecticut, said quitclaim

to be executed by the Husband forthwith and to be held in escrow until the Wife pays to the Husband the $30,000 due to him as the property division between the parties. It is the understanding and contemplation of the parties that the Husband's interest is free of any encumbrances except for the balance of the purchase money mortgage due to the Banking Center of Waterbury.

"The Wife shall pay to the Husband by way of property division the sum of $30,000, said monies to be paid by the Wife on or before April 15, 1985. The Husband will co-sign if necessary, the mortgage note and deed, but only if the Wife is unable to obtain financing in connection with the remortgage of the property without his signature, the Husband to co-sign such a note and deed in the amount up to $55,000.

"If the Wife is unable to obtain funds to pay to the Husband the $30,000 due to him on or before April 15, 1985, then the Wife shall forthwith place the real property on the market for sale and the property shall be sold as soon as practicable. Upon closing, the Husband shall receive the $30,000 due to him.

"The Wife shall indemnify the Husband and hold him harmless with respect to all mortgages, old and new, on the property, as well as taxes, insurance, utilities, and all other expenses and assessments that may arise out of or in connection with said property."

In an effort to refinance the real estate of the parties, beginning on March 4, 1985, the plaintiff contacted several banks. On March 8, 1985, a representative of the Banking Center of Waterbury (Bank) came to the home for an appraisal and to complete the application in the plaintiff's name. After reading a copy of the dissolution judgment, the representative requested that the defendant cosign the mortgage note. The defendant, however, was reluctant to do this. Both the plain-

tiff's counsel and the defendant's counsel were on vacation and unavailable during this time to advise the parties on how to proceed. Upon their return to work, both counsel contacted the Bank concerning the plaintiff's mortgage application. After discussion with both counsel and an examination of the judgment file as revised by counsel, the Bank, on April 4, 1985, agreed to accept the plaintiff's mortgage application without a cosigner on the mortgage note.

By hand delivered letter dated April 24, 1985, the defendant's counsel informed the plaintiff that since the payment of $30,000 had not been made to the defendant by April 15, 1985, as provided in the dissolution judgment, the property should be placed on the market for sale pursuant to that contingency. The letter concluded with a statement that unless the plaintiff tendered $30,000 within the next twenty-four hours, the defendant would "insist the property be placed on the market forthwith."

On April 26, 1985, the plaintiff obtained her mortgage commitment from the Bank. The defendant, however, refused to execute the quitclaim deed to the plaintiff necessary for her closing on the mortgage loan with the bank. He insisted that the property should be put on the market for sale pursuant to the terms of the dissolution judgment.

On September 17, 1985, the plaintiff filed a motion (1) to compel performance of the court's judgment by ordering the defendant to execute a quitclaim deed transferring his interest in the marital property to the plaintiff, (2) to hold the defendant in contempt of court for his failure to complete the transfer, and (3) to order payment of counsel fees. The defendant, on October 3, 1985, filed a countermotion to hold the plaintiff in contempt of court and for attorney's fees. The defendant alleged that the plaintiff failed to comply with the

court's judgment by refusing to place the property on the market after April 15, 1985, and sought an order compelling its sale. The defendant also sought attorney's fees for the preparation and presentation of the motion.

On October 28, 1985, after a hearing, the trial court granted the plaintiff's motion for compliance and ordered that the defendant execute a quitclaim deed in accordance with the dissolution decree within three weeks.

The court also ordered the defendant to pay the plaintiff $500 in attorney's fees. The defendant's motions for contempt and for attorney's fees were denied. On motion of the defendant, the trial court issued its findings of fact incident to its rulings on the parties' motions on December 9, 1985.

The defendant's first claim is that the court's rulings on the parties' motions were not supported by the evidence. Our review of such a claim is governed by the well-established "clearly erroneous" standard. See Practice Book § 4061; *Buddenhagen* v. *Luque,* 10 Conn. App. 41, 44–45, 521 A.2d 221 (1987).

The defendant challenges the findings of the trial court as to the terms of the judgment. The trial court's findings of fact included the following characterization of this aspect of the provision for distribution of the property. "In the event the wife was unable to obtain the necessary amount, the real estate was to be sold and upon closing the husband was to receive $30,000." The defendant alleges that this finding is contrary to the clear language of the judgment which provides that "[i]f the Wife is unable to obtain funds to pay to the Husband the $30,000 due to him on or before April 15, 1985, then the Wife shall forthwith place the real property on the market for sale and the property shall be sold as soon as practicable. Upon closing, the Husband

shall receive the $30,000 due to him." The defendant claims that the court's finding ignored the requirement that the defendant receive $30,000 on or before April 15, 1985, and the condition that, if he did not receive such amount by that date, the property be placed forthwith on the market and sold as soon as practicable. The defendant argues that since the court did not place these specific details in its findings of fact, the court in effect modified the agreement reached by the parties and incorporated into the judgment of dissolution.

There is nothing in the court's findings of fact that indicates that the trial court ignored the April 15, 1985 time limitation for payment to the defendant under the judgment. To the contrary, the court acknowledged in its findings that, although the April 15, 1985 limitation was stated, "time was not of the essence," the plaintiff was diligent, she obtained her mortgage commitment on April 26, 1985, eleven days late, the defendant suffered no damage thereby, and the plaintiff's late tender was sufficient under the terms of the decree of dissolution. See 3A A. Corbin, Contracts § 715 (even when time is of the essence in contracts involving sale of land, performance within a reasonable time after a fixed date is sufficient).

The defendant next argues that the trial court erred in finding that time was not of the essence. The trial court made the specific finding "that time was not of the essence when the proposed closing date of April 15, 1985 was chosen." It also found that counsel for both parties made bona fide attempts to obtain the necessary financing to allow the property transfer and money payment without the necessity of the defendant's signature on the mortgage loan. It further found that the defendant suffered no damage as a result of the eleven day delay in obtaining the financing commitment.

A judgment rendered in accordance with the stipulation of the parties is to be construed and regarded as a binding contract. *Caracansi* v. *Caracansi,* 4 Conn. App. 645, 650, 496 A.2d 225, cert. denied, 197 Conn. 805, 499 A.2d 56 (1985). Construction of such an agreement is an issue of fact to be resolved by the trial court as the trier of fact, and subject to our review under the clearly erroneous standard. See *Lavigne* v. *Lavigne,* 3 Conn. App. 423, 427, 488 A.2d 1290 (1985). The construction and interpretation of the agreement necessarily depends upon the intent of the parties as manifested by the language of the agreement. Id., 428. Where the language of the agreement is unclear, the trier of fact must look to other factors to determine the parties' intention. A determination as to the parties' intent requires the drawing of an inference from other facts. Where the trier of fact draws such an inference, its finding will not be disturbed unless it is unsupported by the facts or is otherwise unreasonable. Id., 428.

The defendant alleges that the language of the agreement is clear and unambiguous and that the court erred in admitting testimony which explained why the April 15, 1985 date was chosen. Where a time for performance is stated in an agreement, a party's tender of performance within a reasonable time thereafter will be considered substantial performance unless the parties intended that time for performance be of the essence. See J. Calamari & J. Perillo, Contracts (2d Ed.) § 11–22, pp. 409–10. Where the agreement does not specifically state that time is of the essence, it is presumed not to be unless the parties have expressed a contrary intent. See *Kakalik* v. *Bernardo,* 184 Conn. 386, 392–93, 439 A.2d 1016 (1981). In the present agreement, there is no stated provision that time is of the essence. The court, therefore, properly considered other factors to determine the parties' intent.

The court considered, and found credible, the testimony of the plaintiff's counsel that April 15, 1985, was selected as an adequate amount of time for the plaintiff to secure her mortgage. The defendant does not rebut the plaintiff's assertion, but rather relies upon the language of the agreement which provides for consequences if the plaintiff failed to tender payment to the defendant by April 15, 1985. Such proviso does not compel the factual conclusion that time was of the essence. See, e.g., *Kakalik* v. *Bernardo,* supra. This is especially true in a case such as this where the agreement contemplated the plaintiff's refinancing of the marital home. Delays in such transactions are frequent and, if reasonable in duration, are generally tolerated. See 3A A. Corbin, supra, § 716, p. 367.

The trial court found that the parties did not intend that time be of the essence in the agreement. In fact, the trial court could have reasonably concluded that the April 15, 1985 date was established merely to ensure that the defendant receive his $30,000 within a reasonable time.[1] In this case, where the agreement is silent on the issue, the plaintiff's trial counsel gave credible testimony that time was not of the essence, and the defendant did not express his interest in having the property sold until after April 15, 1985, we cannot find that the trial court's conclusion was clearly erroneous. The use of the word "forthwith" relative to placing the property on the market for sale is not the legal equivalent of stipulating that "time is of the essence" in an agreement.

---

[1] The judgment provides that upon payment of $30,000 to the defendant, and the sale of the property by the plaintiff before June 1, 1989, the plaintiff's alimony would be progressively reduced to $180 and $100 per week. The defendant argues in his brief that he suffered harm by the plaintiff's late tender because had the property been placed on the market after April 15, 1985, and sold, his alimony payments would be substantially reduced. We find this argument to be without merit, and find it highly unlikely that the parties contemplated such a result in fixing the April 15, 1985 date for payment to the defendant.

The defendant further alleges that fifteen separate findings included in the trial court's findings of fact were without evidence, incomplete, misleading or insufficient for the court's conclusions. We need not review here each of these findings made by the court. After review of the evidence presented to the trial court, including the testimony of the plaintiff and the representative of the Bank, we find each of the challenged findings to be supported by the evidence and, therefore, not clearly erroneous, but supportive of the court's conclusions. See Practice Book § 4061; *Buddenhagen* v. *Luque,* supra.

The defendant's second claim is that the trial court erred in not finding that the plaintiff acted wilfully in failing to obtain the funds to pay the defendant $30,000 on or before April 15, 1985. This claim is no more than an effort to retry the facts, which is not the function of an appellate court. See *Buddenhagen* v. *Luque,* supra, 44–45. We shall review this claim no further than to state that the trial court's finding that the plaintiff made a good faith effort to obtain financing by April 15, 1985, was supported by the record and evidence. We also note that the trial court found that the delay was partially attributable to the parties' desire to have the plaintiff secure the mortgage in her own name, without the necessity of having the defendant cosign the mortgage note. The trial court, therefore, did not err in denying the defendant's motion for contempt on the ground of wilful delay in selling the property and making the settlement payment of $30,000 to the defendant.

The defendant's final claim is that the trial court erred in granting the plaintiff an award of $500 in attorney's fees, reflecting payment for services incurred in connection with the prosecution of the plaintiff's motion to compel performance. The defendant alleges that the court failed to consider the parties' respective finan-

cial abilities as required by General Statutes §§ 46b-62 and 46b-82.[2] The defendant does not contest the reasonableness of the attorney's fees.

General Statutes § 46b-62 provides in relevant part: "In any proceeding seeking relief under the provisions of [chapter 815j, governing dissolution of marriage] . . . the court may order either spouse to pay the reasonable attorney's fees of the other in accordance with their respective financial abilities and the criteria set forth in section 46b-82 [for an award of alimony]."

" 'The allowance of counsel fees is within the sound discretion of the trial court . . . provided the court considers the parties' respective financial abilities and the criteria set forth in General Statutes § 46b-82. General Statutes § 46b-62.' *Burton* v. *Burton,* 189 Conn. 129, 141–42, 454 A.2d 1282 (1983)." (Citation omitted.) *Benson* v. *Benson,* 5 Conn. App. 95, 100, 497 A.2d 64 (1985). "The trial court, moreover, is not obligated to make an express finding on each of the statutory criteria. *Posada* v. *Posada,* 179 Conn. 568, 573, 427 A.2d 406 (1980)." *Benson* v. *Benson,* supra.

In the present case, the court's order for payment of counsel fees did not make specific reference to the various criteria of General Statutes § 46b-82. No such checklist is required to be enumerated. As a public officer, a judge is presumed to have properly performed his duty unless the contrary appears. See *Cahill* v.

[2] We note that the court made no finding that the defendant was in contempt of its order made pursuant to General Statutes § 46b-81 (assignment of marital property). It simply granted the motion to compel, allowing three weeks for the closing, awarded the plaintiff $500 counsel fees, and ordered payment of $750 to the plaintiff for the arrearage in alimony. The court's award of counsel fees was predicated upon the authority for an award of attorney's fees in dissolution and related matters provided in General Statutes § 46b-62, rather than General Statutes § 46b-87 upon a finding of contempt. Nor was the order for payment of counsel fees made pursuant to General Statutes § 52-256b, authorizing reasonable attorney's fees after a finding of contempt, as alleged by the plaintiff.

*Board of Education,* 198 Conn. 229, 242, 502 A.2d 410 (1985). By the same token, we note that the defendant never requested the trial court to articulate the basis for its award of counsel fees. His motion for post-judgment findings of fact was restricted in scope to facts upon which the court granted the plaintiff's motion to compel performance of judgment and motion for contempt.

On appeal, the defendant bears the burden of proving to this court that the trial court did not consider the proper criteria in awarding attorney's fees. It is also the responsibility of an appellant to secure an adequate record for our review. See Practice Book § 4061; *Barnes* v. *Barnes,* 190 Conn. 491, 494, 460 A.2d 1302 (1983); *Katreczko* v. *Katreczko,* 1 Conn. App. 686, 688 n.3, 475 A.2d 323 (1984). The defendant has failed to demonstrate to this court that the trial court did not consider the relative financial situations of the parties and other criteria enumerated in § 46b-82 before awarding attorney's fees to the plaintiff. Our own review of the record, likewise, uncovered no such failure of the trial court.[3]

There is no error.

In this opinion the other judges concurred.

---

[3] Although the court awarded the plaintiff $500 in payment of counsel fees incurred in connection with her motion to compel performance of the judgment, the defendant unsuccessfully sought fees of $750 for the prosecution of his motion to hold the plaintiff in contempt, which the court denied.