[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR ORDER FIXING PARTIES' EDUCATIONAL OBLIGATIONS, POSTJUDGMENT
Before the court is the defendant's motion for order fixing parties educational obligations, postjudgment, dated October 6, 1998.
The marriage of the parties was dissolved on July 7, 1995. There were two children, issue of the marriage, Grayson, d/o/b September 5, 1978 (now 20 years old) and Corrinne, d/o/b August 8, 1980 (now 18 years old). The decree of dissolution incorporated by reference a written separation agreement of the parties. As relevant here, it provides:
 "4.3 The parties shall be responsible for the payment of tuition, room, board and other reasonable expenses relating to four years of post-high school education for the parties' children in proportion to their respective financial abilities and their income at that time. In the event that all or any portion of the educational costs for the child are financed by grants or scholarships with no obligation to repay the same, the parties obligations shall be reduced accordingly."
The defendant's motion alleges, in sum, that the children are attending college, and that he has paid and is paying all of CT Page 4515 their educational expenses. Therefore, the defendant prays that this court fix the parties' proportional share of the children's college expenses, pursuant to the separation agreement, and enter any further order that the court may deem fair and equitable.
The jurisdiction of the Superior Court to enter an order concerning the education of a child beyond the age of eighteen, is permitted exclusively by statute. C.G.S. 46b-66 provides, in pertinent part, that: "[I]f the [separation] agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d." [Brackets added]. "[A]bsent statutory authority, the Superior Court in a dissolution action lacks subject matter jurisdiction to make and enforce by contempt, orders regarding the education of a child over the age of majority. . ." Lavigne v. Lavigne,3 Conn. App. 423, 425 (1985). "The jurisdiction of the Superior Court with regard to orders involving post-majority child support is limited to the power to approve and incorporate written agreements concerning such support into its orders or decrees and to enforce such written agreements." Cattaneo v. Cattaneo19 Conn. App. 161, 164 (1989). Here, there is a written agreement of the parties that complies with C.G.S. 46b-66 and is, therefore, enforceable. Further, "[t]he power to enforce an agreement involving post-majority child support may include the power to determine the amount each party is required to contribute under the terms of the agreement, if the parties agreement contemplates such determination by the court. See Gallagher v. Gallagher,11 Conn. App. 509, 528 A.2d 379 (1987)." Cattaneo, supra, at 164. Again here, there is no contention that the parties' agreement does not contemplate that the court is empowered to determine the amount each party is required to contribute.
Rather, the disagreement involves the interpretation of this post-majority educational provision, and its application to the facts of this case. It is axiomatic that "[a] judgment rendered in accordance with the stipulation of the parties is to be construed and regarded as a binding contract. Caracansi v.Caracansi, 4 Conn. App. 645, 650, 492 A.2d 225, cert. denied,197 Conn. 805, 499 A.2d 56 (1985). . . . The construction and interpretation of the agreement necessarily depends upon the intent of the parties as manifested by the language of the agreement. [Lavigne, supra at] 428." Mihalyak v. Mihalyak, CT Page 451611 Conn. App. 610, 616, 529 A.2d 213 (1987)." Albrecht v. Albrecht,19 Conn. App. 146, 152 (1989).
This court has attempted to canvass Connecticut appellate cases and Superior Court decisions for guidance in determining the meaning of the particular post-majority educational support provision in the instant case, i.e., "the parties shall be responsible. . . in proportion to their respective financial abilities and their income at that time." Two points emerge especially from that examination: in deciding the parties respective financial contributions to their children's education, the court may consider their entire financial circumstances as bearing on their "financial abilities," and second, the court may also consider not simply the parties present income, but their earning capacity.
This court may consider the entire panoply of the parties present financial circumstances in determining their respective obligations for contribution to their children's post-majority education. Were the clause at issue limited to a consideration of the parties income, the courts inquiry might be simpler and less extensive. See, generally, Albrecht, supra, at 151-153. Here, though, the parties expanded the inquiry into "their respective financial abilities and their income. . ."
There are some cases which are instructive. In Gallagher, the post-majority education clause provided that "the husband shall provide college education for the children of the marriage, if he is financially able. . . ." Gallagher, supra, at 511. There, the court entered an order for contribution based upon an increase in the husbands gross income in a certain year over a prior base amount. In Cattaneo, the post-majority education clause provided that "each of the parties is to contribute according to his or her respective financial ability. . ." Cattaneo, supra, at 162. There, the trial court allocated responsibility based upon a ratio of each party's gross income to their combined gross income. Cattaneo, supra, at 165-166.[1] In Cattaneo, the Connecticut Appellate Court stated that "the allocation. . . may fall within the reasonable parameters of the courts discretion. . ." Cattaneo, supra, at 167 (Emphasis added). Superior Court judges have also written decisions on post-majority support allocation. In Gumski v. Gumski,1992 Ct. Sup. 9036 (judicial district Stamford/Norwalk) (Karazin, J., September 28, 1992), the post-majority support provision provided that "the parties agree to provide a college education for the CT Page 4517 minor child, including equal contribution to tuition, books, room and board, or to the extent financially able and relative to their respective incomes." The court found this to be "a confusing provision." The court wrote that, since the parties did not agree to an equal contribution, "this court has reviewed the extent that it determines they are financially able and relative to their respective incomes" (sic). The court considered the parties' dissolution financial affidavits and current financial affidavits, and conducted an evidentiary hearing before reaching its decision. Finally, in Hearon v. Hearon, 1997 Ct. Sup. 6571,19 CLR 649 (judicial district Stamford/Norwalk) (Tierney, J., June 26, 1997) the clause at issue provided that "the husband and wife shall pay, to the extent they are each financially able." In applying this provision, the court considered the parties' several financial affidavits, and evidentiary transcripts and exhibits. The lesson from these cases is that the court has broad discretion in determining the relevance and weight to be accorded to the many different financial circumstances of the parties.
Second, the court briefly addresses the issue of whether it may consider not simply the parties present earned income, but also the parties earning capacity based upon the "financial abilities" language in the post-majority education clause. This court believes it may consider such earning capacity. InGallagher, supra, the court wrote that the "courts rulings on this issue [evidence of past earning capacity and prior years income] " fall within its broad discretionary power to determine the relevancy or remoteness of evidence." (Citation omitted)Gallagher, supra, at 515. In Albrecht, supra, the court affirmed the trial courts decision to exclude evidence of one party's earning capacity based upon the parties strict formula whereby the court should consider only the direct proportion of their respective adjusted gross incomes. Albrecht, at 152-153. However, the Albrecht court wrote further that "[[w]here the determination of the parties financial contributions is not controlled by the provisions of the separation agreement, the court may in appropriate circumstances rely on the parties earning capacities." (Citations omitted.) Albrecht, supra, at 161, fn. 3. In Hearon, supra, the court found that "the focus in the agreement and the courts authority, is the extent of the [parties'] financial capabilities", at 6580, and that responsibility "will be determined based upon the parties earnings, earning capacity and assets." at 6582.
This court held an evidentiary hearing on the defendant's CT Page 4518 motion. Financial affidavits of both parties were submitted. The plaintiff is a family therapist in Darien, Connecticut. She grosses $3,025 per month, and nets $2,486 per month. Additionally, she now receives $2,000 per month gross, $1,656 per month net, in alimony from the defendant. The plaintiff has monthly expenses of approximately $4,000. She owns her home, in which she has $54,800 in equity, and she has liquid assets of about $6,340.[2] The plaintiff has present liabilities of approximately $24,600. The plaintiff has admitted to paying nothing to the children's educational costs, stating that she doesn't have "that kind of money."
The defendant is a financial and business consultant employed in Saint Croix, U.S. Virgin Islands. He has a prior employment history in the banking field. He was employed by Barclay's Bank up to 1994, with his final salary at approximately $160,000 gross, plus a substantial bonus. His position at Barclays was eliminated in 1994. He then went to Fleet Bank where he was a senior vice-president. The defendant was at Fleet Bank for one year, from about March, 1995 to March, 1996. When he left Fleet Bank, the defendant was earning a salary of $120,000 gross per year. The defendant left Fleet voluntarily, based upon circumstances created by his remarriage in January, 1996. His new wife had a home in Saint Croix, and leaving Fleet Bank to join her there made, in his words, "financial sense." The defendant did not pursue employment actively for awhile, and began his present consulting position about November, 1997.
The defendant's earnings as a consultant are performance-based and transactional. He currently estimates an approximate $5,000 per month gross income, $4,348 per month net, all before his payment of alimony to the plaintiff. He has virtually no direct shelter expenses. His stated living expenses of approximately $3,760 per month must be reduced by the various expenses he attributed to or for the children, for whom he no longer has a legal obligation to support since the events in paragraph 4.1 of the Separation Agreement have already occurred. The court estimates that the children's expenses, alone, come to about $800 per month, including an "allowance" of $400 per month. The defendant has assets of $151,500 which are listed on his financial affidavit. Of this, approximately $117,000 is in an IRA, and $7,750 are in liquid funds. Additionally, the defendant and youngest daughter, Corrinne, are joint owners of a Merrill-Lynch brokerage account, in Saint Croix, in the sum of $80,000. It is held as joint tenants with rights of survivorship. CT Page 4519 Further, the defendant has a note payable to his current wife in the sum of approximately $139,000. Part of the note is attributable to his children's tuition costs.
The defendant voluntarily left a position at Fleet Bank to assume his present consulting position in Saint Croix. This caused his employment earnings to decrease from $120,000 to $60,000 per annum. Given his past earning history and his position at Fleet Bank, this court can find that the defendant has a present earning capacity of approximately $120,000. See,Albrecht, supra, fn. 3. It is not necessary that, to attribute earning capacity, the court find the defendant wilfully depleted his earnings with a view to minimizing his contribution for college expenses. "Our cases indicate that it is permissible to utilize a party's earning potential in making financial awards where, as here, the earnings of that party are voluntarily depleted so as to deprive the spouse [here, a child] of financial support." (Citations omitted, brackets added) Miller v. Miller,181 Conn. 610, 612 (1980).
The evidence at the hearing established that Grayson, the parties' eldest child, was currently not in school, but instead was employed full-time. Corrinne, 18, matriculated at Northeastern University on a full-time basis in the fall of 1998. Northeastern uses a trimester system. Tuition, room, board and fees for the 1998-1999 school year are approximately $8,110 per trimester, or $24,330 for the full year. As stated previously, the plaintiff has paid nothing. The defendant paid the first trimester tuition fee of $8,110 in August, and the second trimester tuition fee of $8,110 in December. The third trimester fee in the same amount was due in March, 1999.
The court enters the following orders on the defendants motion to fix costs:
(1) The plaintiff shall be responsible for 25% and the defendant shall be responsible for 75% of the costs for which they are liable under Paragraph 4.3 of the Separation Agreement.
(2) Notwithstanding the same, the defendant shall pay, if he has not done so, already, costs for Corrinne's third trimester at Northeastern University. Thereafter, the parties shall be responsible for future costs in the 25-75% ratio set forth in Paragraph 1. The plaintiff's CT Page 4520 25% share of the cost for Corrinne's 1998-1999 academic year shall be reimbursed by the plaintiff to the defendant within 90 days.
So ordered.
KAVANEWSKY, J.