[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION 
CT Page 3433 RE: DEFENDANT'S MOTION FOR CLARIFICATION (No. 215) AND PLAINTIFF'S AMENDED POST-JUDGMENT MOTION FOR CONTEMPT (No. 218)
Before the court are the defendant's motion for clarification (#215) and plaintiffs amended post-judgment motion for contempt (#218), both of which concern the construction and application of a post-majority educational support provision in a separation agreement.
The marriage of the parties was dissolved in 1983. At the time of the dissolution, the parties had one minor child issue of the marriage, Lindsay, born January 10, 1980. At the time of the dissolution the parties entered into a separation agreement, which was incorporated into the divorce decree. The agreement contained a provision, inter alia, which stated that: "Each party shall make an equal contribution to the college education of the minor child Lindsay." This particular provision was apparently added at the very time of the dissolution hearing by the attorneys and/or the parties; neither party disputes that they were unaware of it, inasmuch as the provision is initialed by both.
During high school Lindsay expressed an interest in the field of occupational therapy. Boston University became her first choice since it had, she believed, one of the premier or most prestigious programs in this area. Lindsay applied to Boston University on an "early acceptance" basis, and was accepted in December, 1997, for the fall, 1998 class. Lindsay graduated from high school with high marks in 1998, and matriculated at Boston University in the fall, 1998. She finished her first year at Boston University in the spring, 1999, and was scheduled to begin her second year there in the fall, 1999. The occupational therapy program is a four year program and six months of clinical work, following which she would have a bachelor of science in occupational therapy. The plaintiff has provided the only financial support for Lindsay's college education. The plaintiffs actual and anticipated expenses are summarized on plaintiffs exhibit 5. These expenses are $98,433 in "direct education expenses," which includes the actual tuition, room and board for Lindsay's first year, and prepaid tuition for her second, third and fourth years, "other education expenses" for the first year, totaling $1,889; and "recurring expenses" for room, board and CT Page 3434 related costs of $5,371 per semester beginning in Lindsay's second year. The plaintiff was able to prepay Lindsay's entire tuition by refinancing her home with a six percent mortgage which was also the rate at which, according to plaintiff, tuition had been rising at Boston University.
The defendant has provided no direct financial support. He gave Lindsay some materials to help her research her choice of colleges and the availability of scholarships or other financial assistance. Lindsay did receive some scholarship monies, totaling $5,300, and at least one of the scholarships was with the direct assistance of the defendant. However, the defendant did not hold Boston University in the high regard that Lindsay did, and he felt he could help her get into other and better schools. The defendant also believed that Lindsay, and the plaintiff, essentially did not pursue scholarship monies astutely enough. The defendant believed that, with the right know-how, Lindsay could get a superior college education with very little money of her (or the parties') own. Despite demand by the plaintiff, the defendant has not made any direct financial contribution to Lindsay's educational and related costs.
The jurisdiction of the Superior Court to enter an order concerning the education of a child beyond the age of eighteen, is permitted exclusively by statute. C.G.S. 46b-66 provides, in pertinent part, that: "[I]f the [separation] agreement is in writing and provides for the care, education, maintenance or support of a child beyond the age of eighteen, it may also be incorporated or otherwise made a part of any such order and shall be enforceable to the same extent as any other provision of such order or decree, notwithstanding the provisions of section 1-1d." [Brackets added]. "{A]bsent statutory authority, the Superior Court in a dissolution action lacks subject matter jurisdiction to make and enforce by contempt, orders regarding the education of a child over the age of majority . . ." Lavigne v. Lavigne,3 Conn. App. 423, 425 (1985). "The jurisdiction of the Superior Court with regard to orders involving post-majority child support is limited to the power to approve and incorporate written agreements concerning such support into its orders or decrees and to enforce such written agreements." Cattaneo v. Cattaneo,19 Conn. App. 161, 164 (1989). Here there is a written agreement of the parties that complies with C.G.S. 46b-66 and is, therefore, enforceable. The court does not subscribe to the defendant's argument that the instant post-majority support obligation is void for vagueness and unenforceable. Further, "[t]he power to CT Page 3435 enforce an agreement involving post-majority child support may include the power to determine the amount each party is required to contribute under the terms of the agreement, if the parties' agreement contemplates such determination by the court. SeeGallagher v. Gallagher, 11 Conn. App. 509, 528 A.2d 379 (1987)."Cattaneo, supra, at 164.
It is axiomatic that "[a] judgment rendered in accordance with the stipulation of the parties is to be construed and regarded as a binding contract. Caracansi v. Caracansi, 4 Conn. App. 645,650, 492 A.2d 225, cert. denied, 197 Conn. 805, 499 A.2d 56
(1985). . . . The construction and interpretation of the agreement necessarily depend upon the intent of the parties as manifested by the language of the agreement. [Lavigne, supra at] 428." Mihalyak v. Mihalyak, 11 Conn. App. 610, 616, 529 A.2d 213
(1987)." Albrecht v. Albrecht, 19 Conn. App. 146, 152 (1989).
"[T]he language used must be accorded its common, actual and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract." (Citations omitted) Barnardv. Barnard, 214 Conn. 99, 110 (1990); also, Legg v. Legg,44 Conn. App. 303, 306 (1997). "When the language is clear and unambiguous, however, the contract is to be given effect according to its terms. Barnard v. Barnard, supra, 110."Greenberg v. Greenberg, 26 Conn. App. 591, 596 (1992). The court believes that the provision at issue, requiring each party to make "an equal contribution" to the college education of Lindsay, is clear and unambiguous.
Assuming arguendo that the subject language was unclear and ambiguous, the court will reach the same result. What sways the court is not simply the use of the word "contribution," but "equal contribution. "It would have been unlikely for the parties to have included within the meaning of "contribution," non-financial contributions of the kind defendant made, without also providing a formula or standard by which the parties or the court could determine whether these nonfinancial contributions were equal to, or in parity with, the financial contributions made by the plaintiff. The defendant's argument therefore, falls of its own weight. Also, the more credible evidence was that the parties intended the word "contribute" to be synonymous with "pay". The fact that defendant proffered evidence that he rejected a pre-dissolution proposal from plaintiff by which he was to "pay" for Lindsay's college education (defendant's exhibit "C"), and insisted on contribute" in the final separation agreement, is CT Page 3436 unavailing. The court believes that it is just as likely that defendant's rejection of plaintiffs proposal did not turn on a "pay" versus "contribute" distinction, but on the basis that plaintiffs proposal called for defendant solely to pay for the college education.
The defendant's motion for clarification is denied, except as may be consistent with this decision. As to plaintiffs motion for contempt, the court finds that there is an arrearage due the plaintiff by the defendant, through the date of the last hearing, in the sum of $47,511 [($100,322 minus $5,300) divided by 2] plus actual future recurring expenses. The court further finds that the defendant's refusal or failure to pay any part of this arrearage has been proven by clear and convincing evidence to have been wilful and, therefore, the defendant is in contempt. The defendant is ordered to file a current financial affidavit within two weeks, following which the plaintiff may move any court of competent jurisdiction for relief on the contempt including any appropriate purge orders.
So Ordered.
KAVANEWSKY, J.