09-4408-cv, 09-4610-cv
Christine Falls Corp. et al. v. Algonquin Power Fund, Inc., et al.

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# SUMMARY ORDER

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 1st day of November, two thousand ten.

PRESENT:

> GUIDO CALABRESI
> DEBRA ANN LIVINGSTON,
> > *Circuit Judges*,
> PAUL A. CROTTY,
> > *District Judge*.[*]

_____

CHRISTINE FALLS CORPORATION, TRAFALGAR POWER, INC.,
> *Plaintiffs-Consolidated-Defendants-Appellants-Cross Appellants*,

MARINA DEVELOPMENT, INC.,
> *Plaintiff-Counter-Defendant-Appellant-Cross-Appellee*,

FRANKLIN INDUSTRIAL COMPLEX, INC., CHRISTINE FALLS OF
NEW YORK, INC., PINE RUN OF VIRGINIA, INC.,
> *Plaintiffs*,

-v.-                          Nos.    09-4408-cv
                                              09-4610-cv

_____

[*] The Honorable Paul A. Crotty, Judge of the United States District Court for the Southern District of New York, sitting by designation.

ALGONQUIN POWER FUND, INC., ALGONQUIN POWER CORPORATION, INC., ALGONQUIN POWER INCOME FUND,
     *Defendants-Counter-Claimants-Appellees-Cross-Appellants*,[1]

ALGONQUIN POWER SYSTEMS, INC., ALGONQUIN POWER SYSTEMS NEW HAMPSHIRE, INC., ALGONQUIN POWER U.S. HOLDINGS, INC.
     *Consolidated-Defendants-Appellees-Cross-Appellants,*

AETNA LIFE INSURANCE,
     *Defendant-Appellee,*

AMERICAN CASUALTY COMPANY OF READING PENNSYLVANIA, CIT CREDIT GROUP, INC., formerly known as Newcourt Credit Group, Inc., CANADIAN INCOME PARTNERS I LIMITED PARTNERSHIP,
     *Consolidated-Defendants.*

---

        EDWARD NORMAN, Boies, Schiller & Flexner, Armonk New York; Paul J. Yesawich, III, Harris Peach PLLC, Pittsford, New York, for *Plaintiffs-Consolidated-Defendants-Appellants-Cross Appellants*.

        MITCHELL T. KATZ, (Teresa M. Bennett *on the brief*) Mentor, Rubin & Trivelpiece, P.C., Syracuse, New York, for *Defendants-Counter-Claimants-Appellees-Cross-Appellants*.

        ANDREW M. BURNS, Burns & Schultz, Rochester, New York, for *Defendant-Appellee*.

     Appeal from the United States District Court for the Northern District of New York

(David N. Hurd, *Judge*.)

     UPON DUE CONSIDERATION, it is hereby ORDERED, ADJUDGED, AND DECREED

that the district court's orders dated April 12, 2006, December 19, 2006, and November 6, 2008 are

---

    [1] The Clerk of Court is directed to amend the caption to refer to Algonquin Power Fund, Inc., Algonquin Power Corporation, Inc., and Algonquin Power Income Fund, Inc. as "defendants."

hereby AFFIRMED insofar as they (1) grant summary judgment in favor of defendants-appellees and defendants-counter-claimants on each of plaintiffs-consolidated-defendants' claims, and (2) deny plaintiffs-consolidated-defendants' motion for leave to amend, but VACATED insofar as they deny summary judgment on defendants-counter-claimants' counter claims and REMANDED for further proceedings on those claims not inconsistent with this Order. Finally, for the reasons set forth herein, we need not reach and thus do not address the claim that the district court erred in finding a valid waiver of any jury right with respect to plaintiffs-consolidated defendants' claims.

This appeal arises from a complex web of litigation stemming from a loan agreement initially entered into between plaintiff-consolidated-defendant-appellant-cross appellant Trafalgar Power Inc. ("Trafalgar") and defendant-appellee Aetna Life Insurance ("Aetna"), and Aetna's subsequent sale of the debt instruments that agreement created – an "A" and a "B" note – to defendants-counter-claimants-appellees-cross-appellees Algonquin Power Fund, Inc., Algonquin Power Corporation, Inc., and Algonquin Power Income Fund, Inc. (collectively, "Algonquin"). The litigation below, which involved several consolidated actions, turned principally on whether (1) Aetna breached the terms of the loan agreement, which gave Trafalgar a limited right of first refusal with respect to the A and B Notes, by selling those Notes to Algonquin, and (2) whether Trafalgar subsequently defaulted pursuant to the terms of the loan agreement, thereby entitling Algonquin, as the Note holder, to accelerate the loan. In a series of opinions, the district court concluded that Trafalgar had failed to properly exercise its right of first refusal, and, accordingly, that Aetna and Algonquin were entitled to summary judgment on each of Trafalgar's claims. It further concluded that Trafalagar could not file a second amended complaint asserting additional claims arising from those sales. Finally, the district court determined that Algonquin was not entitled to summary judgment on its

3

counter claims because it had not properly followed the procedures detailed in the parties' various agreements for accelerating the loans. On appeal, Trafalgar and Algonquin both challenge the district court's rulings on their respective claims. We presume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, and revisit those issues only as necessary to facilitate this discussion.

## I. Trafalgar's Appeal

Before this Court, Trafalgar contends the district court erred in (1) granting summary judgment in favor of Algonquin and Aetna on each of its claims, (2) denying it leave to amend to add additional claims, and (3) finding that it waived its jury right.

### A. The Grant of Summary Judgment

We review a grant of summary judgment *de novo*, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *See Okin v. Vill. of Cornwall-on-Hudson Police Dep't*, 577 F.3d 415, 427 (2d Cir. 2009); *Russo v. City of Bridgeport*, 479 F.3d 196, 203 (2d Cir. 2007). Summary judgment is warranted only where "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Cordiano v. Metacon Gun Club, Inc.*, 575 F.3d 199, 204 (2d Cir. 2009).

Virtually all of Trafalgar's claims turn on Aetna's sale of the A and B Notes to Algonquin, and, specifically, whether those sales violated Trafalgar's contractual right of first refusal. The district court concluded that, with respect to both sales, Trafalgar had failed to properly exercise that right, and, accordingly, that Aetna had permissibly sold the Notes to Algonquin. We agree.

4

With respect to the B Note, we see no error in the district court's conclusion that Trafalgar's failure to comply with the closing date *it selected* in its "Notice of Exercise" freed Aetna to sell the Note to Algonquin instead. On appeal, Trafalgar contends that the sale contract created when it exercised its option[2] did not make "time of the essence" and thus strict compliance with the sale date was not required. We reject that argument as a misstatement of law. Under Connecticut law, which all parties agree governs this dispute, the absence of a "time is of the essence" provision is not itself dispositive. Instead, under such circumstances, courts "must consider other factors to determine the parties' intent." *Mihalyak v. Mihalyak*, 529 A.2d 213, 217 (Conn. App. Ct. 1987). Here, the loan agreement, which created the option in the first place, *cf. Bayer v. Showmotion, Inc.*, 973 A.2d 1229, 1247 (Conn. 2009) (disputes over the terms of option contracts "must be resolved . . . by reference to the terms of the [original] contract"), required Trafalgar to set a sale date and imposed penalties for noncompliance. Specifically, section 15 of that agreement provided that the Notes "shall be sold and transferred to [Borrower] on the date specified in the Notice of Exercise" and that if Trafalgar failed to purchase the Notes in compliance with these terms that "the Deposit shall be forfeited to the Lender, and the Lender shall have the right to sell the Notes . . . to Algonquin." As such, we agree with the district court's finding that the contract *did* require strict adherence to the sale date specified by Trafalgar, and that by failing to honor that sale date, Trafalgar forfeited its right to purchase the B Note. *See Kakalik v. Bernardo*, 439 A.2d 1016, 1021 (Conn. 1981) (Shea, J., concurring) ("Contract provisions which not only set the time for performance but also spell out the consequences of nonperformance usually have been construed to make time of the essence.").

---

[2] Under Connecticut law, a right of first refusal like the one given to Trafalgar in the loan agreement is treated as a form of option contract. *See Bayer v. Showmotion, Inc.*, 973 A.2d 1229, 1247 (Conn. 2009). We therefore evaluate it as such.

With respect to the A Note, Trafalgar contends that Aetna failed to properly notify it that Algonquin had made an offer, and thus that Trafalgar had a right, let alone reason, to exercise its option. We disagree. The record establishes that Aetna sent a letter clearly marked as a "Lender's Notice" to Trafalgar along with the terms of an offer by Algonquin to purchase the A Note, and some modifications on that offer that Aetna demanded. As such, Aetna fulfilled its notice obligations under the Loan Agreement which provide simply that "[i]f Lender shall receive an offer from Algonquin . . . to purchase . . . the Notes . . . Lender shall promptly deliver a copy of [ ] such offer to [Trafalgar] together with Lender's statement that it is prepared to sell the Notes on the terms set forth in the Lender's Notice." By failing to respond to that Lender's Notice, Trafalgar thus forfeited its right of first refusal thereby permitting Aetna to sell the A Note to Algonquin.

Finally, and for substantially the same reasons as set forth by the district court in its Opinion and Order dated November 6, 2008, we agree that Algonquin was entitled to summary judgment on Trafalgar's remaining claims which alleged conversion, breach of fiduciary duty, and negligent management against Algonquin only. To the extent Trafalgar raises any other arguments with respect to the summary judgment opinions, we have considered them and reject them as meritless. Accordingly, we affirm the district court's opinions below insofar as they granted summary judgment in favor of Algonquin and Aetna on each of Trafalgar's claims.

### B. Leave to Amend

Trafalgar next contends the district court erred in failing to grant it leave to file a second amended complaint asserting a series of new tort claims as well as a civil RICO claim. We review a district court's denial of leave to amend for "abuse of discretion," although we review any legal conclusions relevant to that decision de novo. *Kassner v. 2nd Ave Delicatessen, Inc.*, 496 F.3d 229, 242 (2d Cir. 2007). While leave to amend pursuant to Fed. R. Civ. P. 15 should be "freely given

6

when justice so requires," we have long made clear that a district court properly denies such a motion where it finds "[u]ndue delay, bad faith or dilatory motive on the part of the movant . . . undue prejudice to the opposing party . . . [or] futility of amendment." *Dougherty v. Town of N. Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 87 (2d Cir. 2002) (internal quotations omitted, alteration in original).

We discern no abuse of discretion in the district court's denial of leave to amend on this record. Trafalgar's motion sought leave to amend not only years after the case commenced and well after discovery had closed, but while a summary judgment motion – in fact, a *third* summary judgment motion – was *sub judice*. Under such circumstances, our case law makes clear that "a proposed amendment is especially prejudicial" and therefore that it is well within a district court's discretion to deny a motion for leave to amend. *Krumme v. Westpoint Stevens, Inc.*, 143 F.3d 71, 88 (2d Cir. 1988).

### C. Jury Waiver

Finally, Trafalgar contends the district court erred in determining that it contractually waived its jury right. Because we conclude that none of Trafalgar's claims survives this appeal, its assertion of a jury right is rendered moot, and we need not and do not address the issue further.

## II. Algonquin's Cross-Appeal

Algonquin cross-appeals, challenging the district court's denial of summary judgment on, and dismissal of, its counter claims which seek a declaratory judgment that Trafalgar defaulted with respect to both the A and B Notes and, accordingly, that Algonquin was entitled to accelerate the balances due. We again review the district court's findings *de novo*, construing the evidence in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. *Okin*, 577 F.3d at 427.

Determining whether Algonquin was entitled to such relief requires evaluation of whether (1) an event of default occurred within the meaning of the parties' various agreements, and (2) if so, whether Algonquin properly exercised its rights as the Note holder pursuant to those agreements. Without passing on the first, the district court proceeded to the second and concluded that "[e]ven if there was an event of default under the [ ] Agreement, none of the appropriate provisions in such an event were followed." Specifically, the district court was troubled by Algonquin's decision to notify Trafalgar directly of its decision to accelerate the loan rather than adhering to the strict terms of the indenture agreement which it read to require Algonquin to notify the Security Trustee, State Street, and to then have State Street notify Trafalgar. Accordingly, it denied summary judgment and dismissed the counterclaims.

We are unable to agree with the district court's conclusion that Algonquin's notice was deficient. Under Connecticut law, "[t]he modern approach to notice-giving attaches primary importance to actual notice and treats technical compliance with notice procedures as a secondary consideration." *Twenty-Four Merrill St. Condo. Ass'n, Inc. v. Murray*, 902 A.2d 24, 29 (Conn. App. Ct. 2006). Thus, in the context of interpreting a contractual notice provision, the Connecticut Supreme Court instructs that the significance, if any, of slight noncompliance with such a provision "requires a factual inquiry into whether, in the circumstances of a particular case, an [opposing party] has been prejudiced by the" noncompliance. *Aetna Cas. & Sur. Co. v. Murphy*, 538 A.2d 219, 223 (Conn. 1988).

Here, there is no dispute that Trafalgar received actual, timely notice of the acceleration. Moreover, we can discern no evidence in the record to suggest that Trafalgar was somehow prejudiced by receiving that notice from Algonquin directly rather than from State Street. In this respect, we note that had Algonquin made the request to State Street to accelerate the debt, State

8

Street would have been required to "immediately exercise [ ] such rights, powers specified in [that] request." We therefore are unable to agree with the district court that Algonquin's slight noncompliance in this respect warranted denying summary judgment or dismissing the counter-claims.

Algonquin urges us to go one step further and find, on this record, that an event of default occurred and therefore that it is entitled to summary judgment on its counter claims. We decline to do so. On appeal, the parties make a variety of arguments with respect to the alleged event of default and advance differing interpretations of their respective contractual rights and responsibilities pursuant to the loan, management, and indenture agreements. We thus conclude that consideration of these issues and resolution of the question of whether summary judgment is appropriate is best left to the district court in the first instance.

## III. CONCLUSION

Accordingly, and for the reasons set forth above, the district court's orders dated April 12, 2006, December 19, 2006, and November 6, 2008 are hereby AFFIRMED insofar as they (1) grant summary judgment in favor of Algonquin and Aetna on each of Trafalgar's claims, and (2) deny Trafalgar's motion for leave to amend, but VACATED insofar as they denied summary judgment on Algonquin's counter claims and REMANDED for further proceedings on those claims not inconsistent with this Order.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9